# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| KPMG FINANCIAL ADVISORY SERVICES LIMITED, MALCOLM BUTTERFIELD, and MICHAEL MORRISON, <br><br>                    Plaintiffs, <br><br>         v. <br><br> DILIGENCE LLC, <br><br>                    Defendant. | **FILED UNDER SEAL** <br><br> Case No.: |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFFS' MOTION FOR *EX PARTE*
TEMPORARY RESTRAINING ORDER AND EXPEDITED DISCOVERY**

Preliminary Statement

Plaintiffs have been appointed by the Minister of Finance of Bermuda to perform a confidential review of the business and financial affairs of a Bermuda company called IPOC International Growth Fund Limited ("IPOC") and a number of affiliated companies. This investigation has been going on for over a year and Plaintiffs will soon be preparing their final report to the Minister of Finance. Evidence has very recently come to light indicating that Defendant, a Washington D.C.-based international private investigation firm, has obtained confidential documents from Plaintiffs' files through blatantly fraudulent and wrongful means.

Plaintiffs recently discovered that one of their employees has been approached repeatedly over the course of several months by two of Defendant's employees,

DC 550979_1.DOC

**REDACTED**

These facts only came to light because a bundle of documents regarding Defendant's work was delivered anonymously to a U.S. affiliate of Plaintiff KPMG Financial Advisory Services Ltd.

The recently-discovered evidence indicates that Defendant has in fact been retained by a commercial competitor and litigation adversary of IPOC to gather damaging information about IPOC. Defendant has used the information taken from Plaintiffs in attempts to discredit and embarrass IPOC in pending litigation proceedings.

Plaintiffs are commencing the present action in an effort to enjoin Defendant and its employees from continuing their misconduct, recover Plaintiffs' confidential documents and information, and obtain money damages for Defendant's fraud and conversion. By the present motion, Plaintiffs seek preliminary relief needed to prevent Defendant from doing further harm during the pendency of this proceeding.

Plaintiffs respectfully submit that this is one of the unique cases in which entry of an <u>ex parte</u> temporary restraining order is warranted.

(Adler Decl. ¶¶ 14-16.) Plaintiffs seek a temporary



restraining order to prevent Defendant from (1) making any further disclosure of the contents of the confidential documents and information it has obtained from Plaintiffs' files; (2) making any further efforts to obtain confidential documents or information from Plaintiffs or to otherwise interfere with their investigation; and (3) deleting or destroying any of the relevant records. The accompanying declarations and the documents exhibited to them leave no doubt that brazenly wrongful conduct is standard operating procedure at Diligence LLC. Defendant should not be given the opportunity to do further harm in the interval before an inter partes hearing can be scheduled.

As set forth below, Plaintiffs are likely to succeed on the merits of their action and will suffer irreparable harm if Defendant is not restrained from committing further misconduct. Entering a temporary restraining order and preliminary injunction cannot cause any conceivable harm to Defendant inasmuch as Defendant will only be required to refrain from actions that it is not entitled to take, and to comply with its legal obligations to preserve information relevant to this action.

Finally, Plaintiffs respectfully request that the Court order that discovery proceed on an expedited basis. Plaintiffs are in the midst of their ongoing investigation of IPOC and need to confirm the integrity of that investigation as soon as possible. They will need to finalize their work and report to the Bermuda Minister of Finance in the near future. They therefore have an urgent need to assess the full extent of the breach of the confidentiality so that they can address the consequences of that breach and ensure that their investigation is not, even now, being tainted by Defendant's misconduct. In particular, Plaintiffs must urgently ascertain whether, as Defendant's documents seem to indicate,

**REDACTED**

## STATEMENT OF FACTS

The facts supporting the present motion are set forth in detail in the accompanying declarations.[1] The key facts may be summarized as follows:

IPOC is a Bermuda company whose investments have included options and shares of OJSC Megafon ("Megafon"), the third largest Russian GSM mobile telephone operator. (Butterfield Decl. ¶¶ 3-4.) In the Summer of 2003, a company called LV Finance Group ("LV") sold a 25.1% stake in Megafon to a company called Alfa-Eco ("Alfa"). When IPOC learned of this sale, it asserted that it was the holder of an option to purchase this same 25.1% stake. IPOC therefore commenced court proceedings against LV and Alfa in the British Virgin Islands and arbitration proceedings against LV in Zurich and Geneva, Switzerland. (Id. at ¶ 4.)

Alfa and/or LV subsequently asserted in the various proceedings that IPOC and its principals were involved in various financial improprieties and illegal conduct. These assertions came to the attention of the Minister of Finance of Bermuda, who has regulatory authority over Bermuda companies. (Butterfield Decl. ¶ 4.)

In March of 2004, the Bermuda Minister of Finance exercised her statutory power to appoint Inspectors to conduct an investigation into the affairs of IPOC and its corporate affiliates and report to her

(Butterfield Decl. ¶ 5.) By instruments dated March 18,

---

[1] (See Declaration and Witness Statement of                 executed on November 4, 2005 (the "        Decl."); Declaration of              , executed on November 9, 2005 (the "        Decl."); Declaration of Derek J.T. Adler, executed November 9, 2005 (the "Adler Decl."); and Declaration of Malcolm Llewelyn Butterfield, executed on November 9, 2005 (the "Butterfield Decl.").)

**REDACTED**

2004, the Minister appointed Plaintiffs Malcolm Butterfield and Michael Morrison of KPMG Financial Advisory Services Limited ("KPMG FAS Ltd.") as the Inspectors (the "Inspectors") responsible for conducting the IPOC Investigation. Under Bermuda law, all aspects of the IPOC Investigation must be kept strictly private and confidential. (Id. at ¶ 6.) The Inspectors' precise terms of reference have not even been disclosed to IPOC itself. (Id.)

In July 2005, Plaintiffs became aware that LV had submitted papers in the Zurich arbitration that included paragraphs lifted almost verbatim from Plaintiffs' confidential internal working papers on the IPOC Investigation. Plaintiffs' efforts to identify the source of this apparent misappropriation were not successful. (Butterfield Decl. ¶¶ 9-11.)

On or about October 18, 2005, a bundle of papers was delivered anonymously to the Montvale, New Jersey office of KPMG LLP, the U.S. member firm of KPMG International. (Butterfield Decl. ¶ 12;        Decl. ¶¶ 4-5.) The documents include copies of internal emails and other business records of Defendant, along with internal working papers and other confidential documents

(Butterfield Decl. ¶ 14;        Decl. Ex. A; Adler Decl. ¶ 4.)

DC 550979_1.DOC

5

**REDACTED**

Plaintiffs subsequently interviewed Mr.

Decl. ¶¶ 9-10, 26, 29, 38-42, 44-48, 50-53, 55, 72-75, 79.)

(Id. ¶¶ 38-42, 44-48, 50-53, 55, 72-75.)

Many details of Mr.          testimony are corroborated by the records that have recently been anonymously delivered to Plaintiffs. (Adler Decl. ¶¶ 7-11.)

## ARGUMENT

In considering whether to grant a temporary restraining order, a court should consider whether: (1) the movant has a substantial likelihood of success on the merits; (2) the movant will be irreparably injured if relief is withheld; (3) the injunction would cause substantial

**REDACTED**

harm to other parties; and (4) the injunction would further the public interest. See CSX Transp., Inc. v. Williams, 406 F.3d 667, 670 (D.C. Cir. 2005) (citing Serono Labs., Inc. v. Shalala, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998), Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C. Cir. 1977)). These factors are viewed as a continuum, with more of one factor compensating for less of another. See Bracco Diagnostics, Inc. v. Shalala, 963 F. Supp. 20, 27 (D.D.C. 1997). In other words, injunctive relief may be issued "with either a high probability of success and some injury, or vice versa." Cuomo v. U.S. Nuclear Regulatory Comm'n, 772 F.2d 972, 974 (D.C. Cir. 1985).

An ex parte temporary restraining order may be granted if "(1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give notice and the reasons supporting the claim notice should not be required." Fed. R. Civ. P. 65(b).

I. **PLAINTIFFS HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS.**

 A. **Plaintiffs Are Likely To Succeed On Their Claim For Fraud.**

Plaintiffs' first claim for relief is for fraud. To succeed on a claim for fraud plaintiff must prove that (1) the defendant made a false representation; (2) the representation was in reference to a material fact; (3) the defendant had knowledge of its falsity; (4) the defendant intended to deceive; (5) the plaintiff acted in reliance on the misrepresentation; and (6) the plaintiff has suffered harm. See, e.g., Kitt v. Capital Concerts, Inc., 742 A.2d 856, 860-61 (D.C. 1999); Dresser v. Sunderland Apts. Tenants Ass'n, 465 A.2d 835, 839 (D.C. 1983)).

7

The facts set forth in the accompanying declarations leave no doubt that Plaintiffs are likely to succeed on their fraud claim. Defendant's agents falsely represented to Plaintiffs' employee

(  Decl. ¶¶ 10, 26, 41.)

(Id. ¶¶ 11-18, 26-29.) These misrepresentations were knowingly made as part of a project whose specific purpose was to obtain information that Defendant was not otherwise entitled to obtain. (Adler Decl. Exs. B-E.) It is plain that Defendant's misrepresentations were material, and that Mr. relied on them, because they induced Mr.     to perform actions that he would not have been willing to undertake if he had not believed he was assisting his government. ( Decl. ¶¶ 79-80.) Plaintiffs have suffered harm as a result of this fraud in that their investigation has been compromised and their proprietary, confidential information has been stolen and misused.

B. **Plaintiffs Are Likely To Succeed On Their Claim For Conversion.**

Plaintiffs' second claim for relief is for conversion. To succeed on a claim for conversion a plaintiff must show that the defendant unlawfully exercised ownership, dominion, and control over the plaintiff's personalty in denial or repudiation of his right to such property. See, e.g., Dennis v. Edwards, 831 A.2d 1006, 1013 (D.C. 2003).

Here, the documents and information Plaintiffs gathered and generated during the course of the IPOC Investigation are plainly Plaintiffs' property, to which Defendant has no legitimate claim or right. Plaintiff unlawfully exercised dominion and control over Plaintiffs' property when it used deceitful means to induce Mr.     to deliver Plaintiffs' documents to

8



Defendant's agents, and when it subsequently used these materials for purposes Plaintiffs had not agreed to. Plaintiffs are therefore likely to succeed on their claim for conversion.

### C. Plaintiffs Are Likely To Succeed On Their Claim For Unjust Enrichment.

Plaintiffs' third claim for relief is for unjust enrichment. To succeed on a claim for unjust enrichment, a plaintiff must show that the defendant was unjustly enriched at the plaintiff's expense and that the circumstances are such that in equity and good conscience the defendant should make restitution. See News World Commc'ns, Inc. v. Thompsen, 878 A.2d 1218, 1222 (D.C. 2005).

The record shows that

(Id.) Equity and good conscience require that Defendant disgorge the profits of this wrongdoing to the victims of the wrongdoing, i.e. Plaintiffs. Plaintiffs are therefore likely to succeed on their claim for unjust enrichment.

## II. PLAINTIFFS WILL SUFFER IRREPARABLE HARM IF RELIEF IS WITHHELD.

Plaintiffs will suffer irreparable harm unless the Court acts immediately to preserve the status quo and to enjoin Defendant from continuing its wrongdoing. As set forth in detail below and in Mr. Adler's Declaration, the record establishes that Defendant's misconduct is ongoing. The very nature of the right Plaintiffs desire to protect is the confidentiality of their investigation and information related thereto, which will be lost if Defendant is permitted to make further disclosures of the information they have wrongfully obtained from Plaintiffs. No

**REDACTED**

relief that the Court may later enter will be sufficient to compensate Plaintiffs for the harm that will be done if Defendant is permitted to continue to extract and disclose Plaintiffs' confidential materials. Giving advance notice of Plaintiffs' application would provide Defendant with an opportunity and incentive to continue its wrongful conduct in advance of the inter partes hearing.

As the Court recognized in BCCI Holdings (Luxembourg) v. Mahfouz, No. 92-2763(JHG), 1992 WL 382234 (D.D.C. Dec. 10, 1992), ex parte relief is appropriate where there is a likelihood that learning of the filing of an action will provoke defendants to engage in the very action that plaintiffs seek to enjoin before a ruling can be issued:

> Had the plaintiffs or the Court given defendants notice of the hearing on plaintiffs' motion for a temporary restraining order, it appears very likely that before a ruling could be issued, defendants would have transferred assets from the United States to foreign jurisdictions not providing full faith and credit to orders of United States courts. Consequently, denying plaintiffs' request for an *ex parte* hearing would likely prevent the enforceability of a judgment, if any, issued against the defendants, thereby making plaintiffs' suit futile.

See also Abdah v. Bush, No. CIVA041254(HHK)(RMC), 2005 WL 589812 (D.D.C. March 12, 2005) (granting ex parte relief where plaintiffs expressed concern that public filing would provoke respondents to effect the prisoner transfers that plaintiffs sought to enjoin).

REDACTED

Plaintiffs will suffer irreparable harm if Defendant is not prevented from carrying out these plans.

Defendant should also be specifically ordered to preserve all of the confidential materials it has obtained from Plaintiffs, along with all documents (particularly documents stored in electronic form) related to

11

**REDACTED**

_(Adler Decl. ¶ 17, Ex. E.) Defendant's deletion or destruction of documents would cause irreparable harm to Plaintiffs. To complete their statutory duties and try to repair the damage done by Defendant's wrongdoing, it is vital for Plaintiffs to find out exactly what confidential information Defendant obtained, from whom that information was obtained, and what has been done with that information.

### III.   GRANTING INJUNCTIVE RELIEF WILL CAUSE NO HARM TO DEFENDANT.

Complying with the relief Plaintiffs seek will not impose any harm or hardship on Defendant whatsoever. Defendant has no legal or equitable right to obtain confidential documents from Plaintiffs' files and cannot legitimately complain about being restrained from doing so. Nor does Defendant have any right to make further disclosure of the materials it has already taken. Ordering Defendant to preserve all materials relating to           and its theft of Plaintiffs' information will only serve to reinforce the record retention obligations that Defendant would otherwise have in the context of this pending litigation, and does not impose any new obligation.

### IV.   GRANTING INJUNCTIVE RELIEF WOULD BE IN THE PUBLIC INTEREST.

Preserving the confidentiality of proprietary information is generally recognized to serve the public interest. See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Wertz, 298 F. Supp. 2d 27, 34-35 (D.D.C. 2002) (finding public interest in protecting confidential business information and trade secrets). The public interest in the present case is particularly strong because Defendant's agents make it their practice to impersonate agents of the intelligence

12

**REDACTED**

services of the U.K. and U.S. governments. This can only have a detrimental effect on legitimate government intelligence-gathering exercises. Restraining Defendant from continuing its fraud would therefore be in the public interest.

## V.   THE COURT SHOULD ORDER EXPEDITED DISCOVERY.

The federal district courts have broad discretion to depart from normal discovery procedures and schedules in appropriate cases. See, e.g., Fed. R. Civ. P. 26(d), 33(a), and 34(b). In assessing whether expedited discovery is warranted, courts generally require the plaintiff to demonstrate: (1) irreparable injury; (2) some probability of success on the merits; (3) some connection between the expedited discovery and the avoidance of irreparable injury; and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted. Sinclair Nat'l Bank v. Office of the Controller of the Currency, et al., 2000 WL 34012862, at *3 (D.D.C. 2000) (citing Notaro v. Kocj, 95 F.R.D. 403, 405 (S.D.N.Y. 1982)). As demonstrated above, the first two of these factors have been met.

With respect to the third factor – i.e., a connection between the expedited discovery and the avoidance of irreparable injury -- as described above, Plaintiffs are in the process of finalizing their investigation into IPOC's affairs and are completing their report. Meanwhile, the Defendant's internal documents demonstrate

Because these efforts are on-going, Plaintiffs require expedited discovery to assess and address any results of Defendant's efforts. In contrast, Defendant can show no injury that will result from the expedited relief sought. Under these circumstances, there can be no doubt that that expedited discovery is appropriate.



13

DC 550979_1.DOC

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter a temporary restraining order to prevent Defendant from (1) making any further disclosure of the contents of the confidential documents and information it has obtained from Plaintiffs' files; (2) making any further efforts to obtain confidential documents or information from Plaintiffs or to otherwise interfere with the IPOC investigation; and (3) deleting or destroying any records related to the IPOC Investigation and Defendant's contacts with Plaintiffs' employees, and that the Court grant Plaintiffs' request for expedited discovery.

Dated: District of Columbia
November 10, 2005

HUGHES HUBBARD & REED LLP

By: _____
Roberta Koss
D.C. Bar No. 442813
1775 I Street, N.W.
Washington, D.C. 20006-2401
202-721-4600

Attorneys for Plaintiffs

Of Counsel:

Derek J.T. Adler, Esq.
Siubhán J.E. Magee, Esq.
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY 10004

Richard Blann, Esq.
Norton Rose
Kempson House
Camomile Street
London EC3A 7AN
England



**REDACTED**

14

DC 550979_1.DOC