UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| KPMG FINANCIAL ADVISORY<br>SERVICES LIMITED,<br>MALCOLM BUTTERFIELD, and<br>MICHAEL MORRISON,<br>Crown House<br>4 Par la Ville<br>Hamilton, Bermuda<br><br>                    Plaintiffs,<br><br>          v.<br><br>DILIGENCE LLC,<br>1211 Connecticut Avenue N.W.<br>Washington, D.C. 20036<br><br>                    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No.:<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiffs, by and through their undersigned attorneys Hughes Hubbard & Reed LLP, for their Complaint against Defendant Diligence LLC ("Diligence") allege as follows:

1.    Plaintiffs, a Bermudian professional services firm and two of its managing directors, were appointed by the Minister of Finance of Bermuda to perform a confidential review of the business and financial affairs of a Bermuda company called IPOC International Growth Fund Limited ("IPOC") and 11 affiliated Bermuda companies. Defendant is a Washington D.C.-based international private investigation firm that has, upon information and belief, been retained by a business competitor and litigation adversary of IPOC to gather damaging information about IPOC. Pursuant to that engagement, Diligence employees have obtained confidential documents and information from Plaintiffs through wrongful means that

DC 550978_1.DOC

include fraud and bribery. Plaintiffs seek preliminary and permanent injunctive relief as well as compensatory and punitive damages.

## THE PARTIES

2. Plaintiff KPMG Financial Advisory Services Ltd. ("KPMG FAS Ltd") is a Bermuda limited liability company with its principal place of business in Hamilton, Bermuda. KPMG FAS Ltd is a subsidiary of KPMG, the Bermuda member firm of KPMG International, a Swiss corporation. Plaintiffs Malcolm Butterfield and Michael Morrison are managing directors of KPMG FAS Ltd and are British subjects resident in Bermuda.

3. Upon information and belief Defendant is a limited liability corporation headquartered at 1211 Connecticut Avenue N.W., Washington, D.C. On its website Defendant describes itself as "an intelligence gathering and risk management firm." (See www.diligencellc.com.) According to the website, the firm's executives and employees include former agents of the British and U.S. intelligence services.

## JURISDICTION AND VENUE

4. This Court has <u>in personam</u> jurisdiction over Defendant because Defendant is a citizen and resident of the District of Columbia.

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the or sum or value of $75,000, exclusive of interest and costs, and the dispute is between a citizen of a State and citizens or subjects of a foreign state.

6. Venue in this district is proper pursuant to 28 U.S.C. § 1391(a).

2

DC 550978 1.DOC

## FACTUAL ALLEGATIONS

### The IPOC Investigation

7. Non-Party IPOC is a company organized under the laws of Bermuda. It purports to be an open-ended mutual investment fund that invests in high technology, telecommunications, and media enterprises in emerging markets. IPOC has invested in options and shares of OJSC Megafon ("Megafon"), the third largest Russian GSM mobile telephone operator.

8. Non-party LV Finance Group Limited ("LV") is a Moscow-based company that describes itself as a corporate finance and venture capital boutique. LV purportedly held a 25% stake in Megafon. In the summer of 2003, LV purportedly sold this 25% stake in Megafon to non-party Alfa Group ("Alfa").

9. IPOC subsequently contested LV's sale of its interest in Megafon to Alfa, claiming entitlement to the same shares under option agreements dating back to 2001. In 2003 IPOC commenced proceedings in the British Virgin Islands against LV and Alfa in connection with this dispute. IPOC also commenced arbitration proceedings against LV in Zurich and Geneva, Switzerland, where the 2001 option agreements had been executed.

10. In the various proceedings, LV and Alfa asserted that IPOC had been involved in financial improprieties and illegal conduct. These assertions came to the attention of the Minister of Finance of Bermuda, who has regulatory authority over Bermuda companies. In March of 2004, the Minister of Finance exercised her statutory power to appoint Inspectors, pursuant to § 132(1) of the Bermuda Companies Act 1981, to conduct an investigation into the affairs of IPOC and its corporate affiliates (the "IPOC Investigation"). By instruments dated March 18, 2004, the Minister appointed Malcolm Butterfield and Michael Morrison of KPMG FAS Ltd as Inspectors (the "Inspectors"). Pursuant to this appointment, the Inspectors and

3

KPMG FAS Ltd are required to investigate and report to the Minister

11. Under section 132(6) of the Bermuda Companies Act of 1981, all aspects of the IPOC Investigation are required to be kept strictly private and confidential unless the companies under investigation request otherwise. The companies have not made such a request. The Inspectors and KPMG FAS Ltd have taken appropriate steps to maintain the confidentiality of the documents and information they have gathered, reviewed, and generated in connection with the IPOC Investigation.

12. Since commencing the IPOC Investigation, the Inspectors and KPMG FAS Ltd, supported by KPMG LLP UK, the UK member of KPMG International (together "KPMG"), have collated and analyzed large volumes of confidential documents and information relating to the affairs of IPOC and its affiliates. Among other sources of information, the Inspectors and KPMG FAS Ltd have obtained access to confidential financial and other business records of IPOC and have conducted interviews of individuals who have relevant information about IPOC and its affiliates. All of this information has been gathered on a strictly confidential basis, as required by Bermuda law.

13. The IPOC Investigation is nearing completion. Upon completion of their investigation, KPMG and the Inspectors are required to provide the Minister and the companies with a detailed confidential report of their findings. KPMG and the Inspectors are in the process of preparing to finalize their report in the very near future.

**Defendant's Theft of Documents and Information**

14. In July 2005, LV submitted papers in the Zurich arbitration commenced by IPOC that included material taken verbatim from internal working papers prepared by KPMG

REDACTED

FAS Ltd in connection with the IPOC Investigation. Neither the Inspectors nor KPMG FAS Ltd had conveyed the contents of these papers to anyone outside the KPMG engagement team and their legal advisors, nor had they authorized anyone else to do so. After learning of this breach of confidentiality, the Inspectors and KPMG made unsuccessful efforts to ascertain how LV had obtained access to materials from the IPOC Investigation.

15. On or about October 18, 2005, a bundle of papers was delivered anonymously to the Montvale, New Jersey office of KPMG International's U.S. member firm, KPMG LLP. The documents include copies of internal emails and other business records of Defendant, along with internal working papers and other confidential documents

16. Plaintiffs subsequently interviewed Mr. 

According to Mr.        , the circumstances were as follows:

5

DC 550978_1.DOC

**REDACTED**

**REDACTED**

**REDACTED**

7

**REDACTED**

17. Upon information and belief, all of the foregoing statements made by Mr. ███ and Ms. ███ to Mr. ███ were false, and were made with intent to defraud Plaintiffs and wrongfully obtain confidential documents and information about the IPOC Investigation.

18. Upon information and belief, Defendant's agents have also made, and may be continuing to make, contact with employees of KPMG in an effort to obtain additional confidential information about the IPOC Investigation, as well as to influence the outcome of that investigation.

### FIRST CLAIM FOR RELIEF
### [Fraud]

19. Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs as though set forth fully herein.

**REDACTED**

9

20. Defendant knowingly and intentionally made material misrepresentations to Plaintiffs and their agents, and omitted material facts that it had a duty under the circumstances to disclose, including but not limited to the specific misrepresentations detailed in Paragraph 16, supra. Defendant made these misrepresentations and omissions intending that Plaintiffs and their agents would rely upon them, and Plaintiffs and their agents did so rely. Plaintiffs have suffered substantial damages as a direct and proximate result of Defendant's fraud.

21. Plaintiffs have suffered irreparable harm as a result of Defendant's wrongful conduct, and will continue to suffer immediate and irreparable injury unless Defendant is (i) ordered to disclose the full extent of its misconduct and manner in which the documents and information it has wrongfully obtained have been disseminated, (ii) restrained and enjoined from continuing efforts to obtain and disseminate Plaintiffs' confidential information, and (iii) ordered to undertake all steps necessary and appropriate under the circumstances to remedy the results of its misconduct. Plaintiffs need immediate injunctive relief in order to determine the extent of the damage that has been done, make any required disclosures to IPOC and the Bermuda Minister of Finance and otherwise remedy this breach of confidentiality, and ensure that Plaintiffs can complete the IPOC Investigation and prepare their final report without further interference from Defendant.

22. Defendant's actions were intentional, willful and wanton. It appears that it is a normal and usual part of Defendant's business practices to obtain information through blatantly fraudulent and illegal conduct, and to do so in a manner that is specifically designed to evade detection. Defendant's business practices interfere with the conduct of legitimate intelligence-gathering operations of the British and U.S. governments and therefore pose a

serious risk and danger to the general public. An award of punitive damages is necessary in order to deter Defendant from engaging in such misconduct in the future.

## SECOND CLAIM FOR RELIEF
[Conversion/Misappropriation]

23. Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs as though set forth fully herein.

24. Defendant has converted and misappropriated property belonging to Plaintiffs in the form of confidential documents and information Plaintiffs gathered or generated in connection with the IPOC Investigation. Plaintiffs have suffered substantial damages as a result of Defendant's conversion of Plaintiffs' documents and information, and also as a result of Plaintiffs' disclosure thereof to others.

25. Plaintiffs have suffered irreparable harm as a result of Defendant's wrongful conduct, and will continue to suffer immediate and irreparable injury unless Defendant is (i) ordered to disclose the full extent of its misconduct and manner in which the documents and information it has wrongfully obtained have been disseminated, (ii) restrained and enjoined from continuing efforts to obtain and disseminate Plaintiffs' confidential information, and (iii) ordered to undertake all steps necessary and appropriate under the circumstances to remedy the results of its misconduct. Plaintiffs need immediate injunctive relief in order to determine the extent of the damage that has been done, make any required disclosures to IPOC and the Bermuda Minister of Finance and otherwise remedy this breach of confidentiality, and ensure that Plaintiffs can complete the IPOC Investigation and prepare their final report without further interference from Defendant.

26. Defendant's actions were intentional, willful and wanton. It appears that it is a normal and usual part of Defendant's business practices to obtain information through

blatantly fraudulent and illegal conduct, and to do so in a manner that is specifically designed to evade detection. Defendant's business practices interfere with the conduct of legitimate intelligence-gathering operations of the British and U.S. governments and therefore pose a serious risk and danger to the general public. An award of punitive damages is necessary in order to deter Defendant from engaging such misconduct in the future.

### THIRD CLAIM FOR RELIEF
### [Unjust Enrichment]

27. Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs as though set forth fully herein.

28. Defendant has received substantial sums of money in exchange for the documents and information it wrongfully obtained from Plaintiffs, including but not limited to

Defendant has been unjustly enriched by these payments, which have been earned at the expense and to the detriment of Plaintiffs. Under the circumstances, it would be unfair and inequitable for Defendant to retain these funds.

### DEMAND FOR RELIEF

Wherefore Plaintiffs respectfully request that the Court enter judgment as follows:

A. Granting Plaintiffs preliminary and permanent injunctive relief:

1) ordering Defendant and its employees and agents to cease all contact with KPMG FAS Ltd and its employees or agents regarding the IPOC Investigation or otherwise in connection with Defendant's

2) ordering Defendant and its employees and agents to cease disclosing or communicating any of the documents and information it has wrongfully obtained

REDACTED

from Plaintiff, including but not limited to any reports, summaries, compilations or other materials any part of which is based on or derived from or refers to such documents or information, to anyone whatsoever;

3) ordering Defendant and its employees and agents to make full disclosure to Plaintiff regarding: (i) all contacts it has made with Plaintiff's employees and agents, (ii) all documents and information it has obtained from Plaintiff, and (iii) the manner in which such documents and information have been disclosed or communicated by Defendant and its employees and agents, including to whom such communication or dissemination was made and the contents of such disclosures;

4) ordering Defendant and its employees and agents to turn over to Plaintiff all of the documents and information it has wrongfully obtained, including all documents or data compilations that include, incorporate, or refer to any information derived therefrom;

5) ordering Defendant and its employees and agents to take appropriate steps to eliminate any traces of the confidential documents and information from any and all digital storage media that are within Defendant's control; and

6) Ordering Defendant and its employees and agents to take such other steps as may appear appropriate to eliminate the harm caused by Defendant's wrongful conduct and prevent such harm from recurring in the future.

B. Awarding Plaintiff compensatory damages in an amount to be determined at trial but in no event less than $1,000,000;

DC 550978_1 DOC

C. Ordering Defendant to disgorge to Plaintiff all of the monies it has received in connection with

D. Awarding Plaintiff punitive damages in an amount to be determined at trial but in no event less than $10,000,000;

E. Awarding plaintiff the costs of bringing this action, including reasonable attorneys' fees; and

F. Granting such other and further relief as the Court may deem just and proper under the circumstances.

**REDACTED**

DC 550978_1.DOC

Plaintiffs demand trial by jury of all claims or forms of relief for which they are so entitled.

Dated: District of Columbia
November 10, 2005

HUGHES HUBBARD & REED LLP

By: /s/ Roberta Koss
Roberta Koss
D.C. Bar No. 442813
1775 I Street, N.W.
Washington, D.C. 20006-2401
202-721-4600

Attorneys for Plaintiffs

Of Counsel:

Derek J.T. Adler, Esq.
Siubhán J.E. Magee, Esq.
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY 10004

Richard Blann, Esq.
Norton Rose
Kempson House
Camomile Street
London EC3A 7AN
England

DC 550978_1.DOC