IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KPMG FINANCIAL ADVISORY
SERVICES LIMITED,
MALCOLM BUTTERFIELD, and
MICHAEL MORRISON,

          Plaintiffs,

         v.

DILIGENCE LLC,

         Defendant.

Civil Action No: 05-2204
(PLF)

RECEIVED
NOV 2 8 2005
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY

### Preliminary Statement

Plaintiffs' 18 month investigation of IPOC and its affiliates (the "IPOC Investigation") is nearing completion. On completion of the investigation, Plaintiffs are required to prepare their final report to the Bermuda Minister of Finance.[1] Defendant does not dispute that it has been retained to act as one player in a deceptive campaign intended to (1) subvert an unknown number of Plaintiffs' employees, (2) influence the result of Plaintiffs' final report, (3) steal confidential information about the IPOC Investigation, and (4) distribute that information to unidentified third parties for purposes that remain largely unknown.

Plaintiffs should not be required to finalize their report until they are able to remove any doubt about whether their work has been or is being influenced by the agents of any

---

[1] Defendant appears to misunderstand the nature of Plaintiffs' role. They are not "official agents" acting "on behalf of" the Minister of Finance of Bermuda. (See Defendant's Memorandum In Opposition To Plaintiffs' Motion For Expedited Discovery ("Opp. Mem.") at 2.) They are private parties who have been appointed by the Minister of Finance to perform an independent investigation and report to the Minister.

third party and whether stolen materials have been used to undermine the investigation. To ensure the integrity of the IPOC Investigation, Plaintiffs urgently need to assess the full extent of the breach of confidentiality, address the consequences of that breach,

**REDACTED**

Plaintiffs will be irreparably harmed if they are forced to finalize their report without assurance as to its integrity, or to delay finalizing their report while discovery proceeds in the normal course.

Defendant's arguments for delaying disclosure of the full nature and extent of its wrongdoing are not persuasive. Although the Court's November 11, 2005 Order (the "November 11 Order") should prevent further interference by Defendant, it does not bind Defendant's ultimate client or other non-parties who may be acting in concert with Diligence and its client. Nor does the November 11 Order provide any mechanism for assessing or addressing any continuing impact of Defendant's actions on the ongoing IPOC Investigation. Defendant has not given any reason why it would be burdensome or difficult to produce documents related to "Project Yucca" and the IPOC Investigation, or shown that the personnel with knowledge of the matter are unavailable. Defendant does not dispute that the Court has subject matter jurisdiction over Plaintiffs' claims, and personal jurisdiction over Defendant, and has not articulated any legal theory under which the Court might decline to exercise its jurisdiction.

## ARGUMENT

The Federal Rules of Civil Procedure give the district courts broad discretion to depart from normal discovery procedures where good cause is shown. See, e.g., Fed. R. Civ. P.

26(d), 33(a), and 34(b); Ellsworth Assocs., Inc. v. United States, 917 F. Supp. 841, 844 (D.D.C. 1996) (Federal Rule 34(b) expressly provides that courts may expedite discovery). The limited case law discussing expedited discovery reveals two commonly recognized approaches to determine whether it is appropriate: (1) the four part test in Notaro v. Koch,[2] and (2) a simple reasonableness test. In re Fannie Mae Derivative Litig., 227 F.R.D. 142, 142-43 (D.D.C. 2005).

The Notaro test analyzes four factors to determine if expedited discovery is appropriate: (1) irreparable injury; (2) some probability of success on the merits; (3) some connection between the expedited discovery and the avoidance of irreparable injury; and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted. Sinclair Nat'l Bank v. Office of the Controller of the Currency, No. 00-2398, 2000 WL 34012862, at *3 (D.D.C. Dec. 18, 2000) (citing Notaro v. Koch, 95 F.R.D. at 405).

Some courts have found that the Notaro test "unduly circumscribes the wide discretion normally accorded the trial court in managing discovery,"[3] and prefer a "reasonableness" or "good cause" assessment that examines a request on the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances. See, e.g., In re Fannie Mae Derivative Litig., 227 F.R.D. at 142-43 (citing Entm't Tech. Corp. v. Walt Disney Imagineering, No. 03 Civ. 3546, 2003 WL 22519440, at *3 (E.D. Pa. Oct. 2, 2003)); Ayyash v. Bank Al-Madina, 2005 WL 1668527, at *1 (citing Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor, 198 F.R.D. 618, 623-624 (N.D. Ill. 2000)). The factors

---

[2]    95 F.R.D. 403, 405 (S.D.N.Y. 1982).

[3]    Semitool, Inc. v. Tokyo Electron Am., Inc., 208 F.R.D. 273, 275 (N.D. Cal. 2002); see also Ayyash v. Bank Al-Madina, No. 04 Civ. 9201, 2005 WL 1668527, at *1 (S.D.N.Y. Jul. 12, 2005) (rejecting Notaro and finding that since "the Rules permit the Court to act by order, but do not elaborate on the basis for taking action, it seems that the intention of the rule-maker was to confide the matter to the Court's discretion, rather than to impose a specific and rather stringent test").

considered by courts applying the reasonableness test are in fact not dissimilar to the Notaro factors.[4]

Expedited discovery is particularly appropriate when a plaintiff seeks injunctive relief because of the expedited nature of injunctive proceedings, Ellsworth Assocs., Inc. v. United States, 917 F. Supp. at 844, and is regularly permitted in circumstances, such as here, where the defendant is alleged to have stolen the plaintiff's confidential information. See United Nations v. Parton, 369 F. Supp. 2d 1, 2 (D.D.C. 2005) (modifying TRO to allow for expedited discovery where plaintiff alleged defendant had stolen confidential documents from plaintiff because plaintiff had need to "see exactly what the defendant has taken from the plaintiff and, more importantly, whether the plaintiff needs to notify confidential informants … that their identities may be revealed"); Advanced Portfolio Techs., Inc. v. Advanced Portfolio Techs. Ltd., No. 94 Civ. 5620, 1994 WL 719696 (S.D.N.Y. Dec. 28, 1994) (granting expedited discovery where defendant allegedly misused confidential and proprietary information of plaintiff).

Plaintiffs respectfully submit that expedited discovery is appropriate here regardless of whether the Notaro test or the reasonableness standard is applied. An examination of each of the Notaro factors shows why, under the overall circumstances, Plaintiffs have shown that it is reasonable and appropriate to deviate from the usual schedule for discovery provided under the Federal Rules of Civil Procedure.

---

[4]    The "reasonableness test" includes looking at: (1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of typical discovery the request is made. In re Fannie Mae Derivative Litig., 227 F.R.D. at 142-43 (citing Entm't Tech. Corp. v. Walt Disney Imagineering, 2003 WL 22519440, at *3-5).

I.    **PLAINTIFFS WILL SUFFER IRREPARABLE HARM IF RELIEF IS WITHHELD.**

Defendant argues that the need for expedited discovery is obviated by the November 11 Order. (Opp. Mem, at 8-9.) This is not the case.

While the November 11 Order prohibits Defendant from further interfering with Plaintiffs' investigation and subverting their employees, the November 11 Order alone is insufficient to enable Plaintiffs to complete their statutory duties and ensure the integrity and fairness of their investigation.

**REDACTED**

Defendant's papers provide no reassurance on this point. Further, Plaintiffs need to determine whether the prior theft and disclosure of their confidential materials has affected the fairness or accuracy of their investigation, and what ongoing effects such disclosure may be having.

Defendant misunderstands the nature of the threatened harm to Plaintiffs, arguing that it is harm of a monetary nature and is therefore not irreparable. (See Opp. Mem. at 6-7.) In fact, the harm which Plaintiffs fear is further damage to their investigative process and to their final report -- an injury that is inherently unquantifiable and thereby incapable of remedy by money damages.

In circumstances like those present here, where a defendant has stolen confidential information and likely spread that information, courts are not hesitant to grant a plaintiff's request for expedited discovery. See United Nations v. Parton, 369 F. Supp. 2d at 2-3 (ordering expedited discovery where defendant was alleged to have stolen confidential

5

documents from plaintiff to enable plaintiff to "see exactly what the defendant has taken" and whether that information has been disseminated); Advanced Portfolio Techs., Inc. v. Advanced Portfolio Techs. Ltd., 1994 WL 719696, at *4 (granting expedited discovery where defendant allegedly misused confidential and proprietary information of plaintiff). If Plaintiffs are caused to produce a report that is inaccurate or tainted by Defendant's interference in the process there can be no subsequent satisfactory recourse. Similarly, if one or more of Defendant's contacts publishes information from Plaintiffs' working papers – there will be no way to take it back. Plaintiffs' ability to perform their professional duties has already been severely damaged by Defendant's wrongful conduct and they should not have to suffer the further inevitable injury that would result from reporting whilst suspicion of interference remains, or from publication of Plaintiffs' interim working papers by a third party.

Plaintiffs' need is urgent because they will soon complete their investigation and should at that stage deliver their final report. (Declaration of Malcolm Llewelyn Butterfield, executed on November 9, 2005 ("Butterfield Decl.") ¶ 19.) Plaintiffs should not be required to specify any precise date when the report is expected to be finalized, as Defendant would require (Opp. Mem. at 6).

**REDACTED.**

Nor have Plaintiffs been dilatory in seeking relief from the Court. A period of two weeks from when Plaintiffs discovered the breach of confidentiality to when they commenced this action was not unreasonable given the need to investigate the matter internally and instruct U.S. counsel. And the period of several days (three of them weekend and holiday days) between entry of the November 11 Order and service thereof was necessary due to the need to consult and seek

6

instructions with respect to the confidentiality concerns raised by that portion of the November

11 Order that provided for unsealing the case after service of the Order.

II.    DEFENDANT DOES NOT DISPUTE THAT PLAINTIFFS ARE LIKELY TO
SUCCEED ON THE MERITS OF THEIR CLAIMS, NOR DOES DEFENDANT
ARTICULATE ANY THEORY PURSUANT TO WHICH THE ACTION MIGHT
BE DISMISSED.

Defendant does not dispute that Plaintiffs are likely to succeed on the merits of

their claims. (Memorandum Of Points And Authorities In Support Of Plaintiffs' Motion for *Ex*

*Parte* Temporary Restraining Order and Expedited Discovery ("Pl. Mem.") at 7-9.) Nor does

Defendant dispute that this matter comes within the Court's diversity jurisdiction, or that the

Court has in personam jurisdiction over Defendant – which is headquartered in Washington,

D.C. However, Defendant suggests that the Court "may well decline to exercise jurisdiction"

over this matter because it concerns events that took place abroad. (Opp. Mem. at 2, 12-13.)

Defendant presumably means to suggest that the Court might decline jurisdiction

under the doctrine of forum non conveniens. But Defendant has not shown that such dismissal

would be appropriate. As a threshold matter, Defendant has not shown that there is an available

alternative forum where Defendant is amenable to suit and the dispute could be more

conveniently litigated. El-Fadl v. Central Bank of Jordan, 75 F.3d 668, 677-78 (D.C. Cir. 1996)

(citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 n.22 (1981)). Nor does Plaintiff argue

that the relevant public and private interest factors would weigh strongly in favor of dismissal.

See Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09 (1947) (setting forth forum non conveniens

standard). Although Bermuda has a strong interest in this matter, the United States has an

undeniable interest in preventing a U.S. firm from perpetrating frauds on victims overseas

7

# REDACTED

The subject matter of this action concerns Defendant's conduct. The relevant witnesses and evidence are likely to be here in Washington – where Defendant is headquartered. Certainly Defendant has made no showing to the contrary.

## III.  EXPEDITED DISCOVERY IS LIKELY TO MINIMIZE ONGOING IRREPARABLE INJURY TO PLAINTIFFS.

As discussed above, Plaintiffs are in the process of finalizing their investigation into IPOC's affairs and are completing their report

# REDACTED

Armed with such information Plaintiffs can act to prevent their interests from being further jeopardized and ensure the integrity of their report.

## IV.  DEFENDANT HAS NOT SHOWN THAT EXPEDITED DISCOVERY WILL IMPOSE ANY UNREASONABLE BURDEN OR OTHERWISE HARM ITS INTERESTS.

Contrary to Defendant's assertion, the disclosure Plaintiffs seek is not "virtually unlimited." (Opp. Mem. at 9.) Aside from modifying the schedule for disclosure, all of the

---

[5] Cf., e.g., IIT v. Vencap, Ltd., 519 F.2d 1001, 1017 (2d Cir. 1975) ("We do not think Congress intended to allow the United States to be used as a base for manufacturing fraudulent security devices for export, even when these are peddled only to foreigners. This country would surely look askance if one of our neighbors stood by silently and permitted misrepresented securities to be poured into the United States."); CL-Alexanders Laing & Cruickshank v. Goldfeld, 709 F. Supp. 472, 481 (S.D.N.Y. 1989) ("Although Britain obviously has a strong public interest in protecting British citizens from alleged fraud perpetrated by British auditors, the United States has an equally strong interest in preventing alleged securities frauds planned and executed in the United States. Here, the securities were those of a United States corporation, and a United States auditing firm and New York law firm were intimately involved. Thus, the public interest too supports assertion of jurisdiction.").

substantive limitations imposed by the Federal Rules of Civil Procedure will still be in force, including the limitations on relevance and the extent of the use of the various discovery devices. The substantive subject matter addressed by Plaintiffs' requests for injunctive relief is relatively circumscribed, i.e., (1) who retained and instructed Defendant, (2) what efforts Defendant made to obtain documents and information from Plaintiffs, (3) what Defendant obtained or learned as a result of those efforts, (4) to whom Defendant provided the information it obtained, and (5) what efforts Defendant made to influence the results of the IPOC Investigation. Although it would seem inefficient to pursue disclosure on these topics while deferring those few areas that pertain only to the merits of Plaintiffs' claim for damages (e.g., how much money Defendant was paid for Plaintiffs' information), Plaintiffs will be happy to bifurcate disclosure in this manner if the Court would consider it appropriate to do so.[6]

Providing the disclosure Plaintiffs seek will not impose any harm or hardship on Defendant whatsoever. Plaintiffs will only require production of documents available to Defendant and depositions regarding facts known to Defendant. See Twentieth Century Fox Film Corp. v. Mow Trading Corp., 749 F. Supp. at 475 (expedited discovery was not burdensome where information sought was within the custody and control of defendant and where threatened irreparable injury potentially faced by plaintiff was of far greater significance than any inconvenience to defendant). Furthermore, the documents and information requested would have to be provided under a normal discovery timetable anyway. See Semitool, Inc. v. Tokyo Electron Am., Inc., 208 F.R.D. at 276.

---

[6] Cf. Ellsworth Assocs., Inc. v. United States, 917 F. Supp. at 844 (allowing expedited discovery where plaintiffs had narrowly tailored their request); Twentieth Century Fox Film Corp. v. Mow Trading Corp., 749 F. Supp. at 475 (granting expedited discovery request when Court had previously granted TRO, where request sought information regarding source, quantity, and identity of recipients of infringing merchandise and profits earned therefrom).

Defendant argues that its business commitments and responsibilities will be hampered if it is forced to comply with discovery on an expedited basis.[7] Plaintiffs will undertake to be flexible with respect to scheduling deposition dates at the witnesses' convenience, provided there are no unreasonable delays. The discovery requested will be required from Defendant at the usual time for discovery, and Defendant makes no argument as to why complying with discovery requests now will be any more injurious to its business than engaging in discovery later. (See Opp. Mem. at 11.) Nor does Defendant have any legitimate business interest in continuing wrongful conduct of the type described in the Complaint in this action.

In short, Defendant has given no good reason for delaying discovery. See United Nations v. Parton, 369 F. Supp. 2d at 3 (allowing amendment to TRO to permit expedited discovery requiring defendant to produce all documents stolen from plaintiff where defendant failed to present any reason to delay the relief sought). Consequently, any hypothetical inconvenience to Defendant in complying with expedited discovery is overshadowed by the substantial harm threatened to Plaintiffs and to their investigation, harm which is incapable of subsequent remedy by other means.

---

[7] Defendant cites Semitool for the proposition that the Court should "consider prejudice and disruption to defendants' business resulting from discovery." (Opp. Mem. at 11.) However, in that case the Court was concerned with interference with the defendant's relationship with a customer from whom the plaintiff was requesting third-party discovery on an expedited basis. See Semitool, Inc. v. Tokyo Electron Am., Inc., 208 F.R.D. at 277-78. That is not a concern here.

10

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' request for expedited discovery.

Dated: November 28, 2005

HUGHES HUBBARD & REED LLP

By: _____
Roberta Koss
D.C. Bar No. 442813
1775 I Street, N.W.
Washington, D.C. 20006-2401
202-721-4600

Attorneys for Plaintiffs

Of Counsel:

Derek J.T. Adler, Esq.
Siubhán J.E. Magee, Esq.
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY 10004

Richard S. Blann, Esq.
Norton Rose
Kempson House
Camomile Street
London EC3A 7AN
England