IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KPMG FINANCIAL ADVISORY )
SERVICES LIMITED, )
MALCOLM BUTTERFIELD, and )
MICHAEL MORRISON, )
)
Plaintiffs, )
)
v. )        Civil Action No. 05-2204 (PLF)
)
DILIGENCE LLC )
)
Defendant. )
)

## MEMORANDUM IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS

Defendant Diligence Inc., by and through undersigned counsel, respectfully moves

the Court to dismiss this action on two separate and independent grounds: *first*, for *forum non*

*conveniens*, because Bermuda is an available alternate forum in which to litigate this dispute

alleging torts committed in Bermuda in connection with the Government of Bermuda's

investigation of twelve Bermudian companies; and *second*, pursuant to Federal Rules of Civil

Procedure 12(b)(7) and 19(b), for failing to join an indispensable party—namely, the Government

of Bermuda.

This case simply does not belong in this Court. Plaintiffs are Bermudian residents

acting as official government Inspectors under commission from the Bermudian Minister of

Finance. Their Complaint alleges: (a) commercial torts committed outside the United States – in

Bermuda and the Cayman Islands; (b) against non-U.S. Residents; (c) relating to an investigation

by the Bermudian government; (d) of Bermudian companies; (e) involved in Swiss and British

Virgin Islands arbitration proceedings; (f) between Russian, British Virgin Islands, and Bermudian firms; (g) over stock in a Russian telecommunications company.

Moreover, Plaintiffs have cloaked themselves in the Bermudian public interest, littering their papers with requests for "international comity" and such, and peppering this Court with personal intercessions from the Bermudian Ministry of Finance. Yet all the while, both Plaintiffs and the Ministry have assiduously taken pains to ensure that the Government of Bermuda is not a party – thus reserving for the Government a "second bite at the apple" back in the courts of Bermuda, where this action properly belongs in the first place. The Rules of this Court do not permit this; Plaintiffs' Complaint should, accordingly, be dismissed.

## BACKGROUND

The factual allegations contained in Plaintiffs' Complaint and the affidavits in support of Plaintiffs' preliminary injunction request clearly establish the connection between Bermuda and its sovereign to this dispute, as well the absence of any meaningful United States connection to this action.[1]

This lawsuit is brought by "a Bermudian professional services firm and two of its managing directors." Compl. ¶ 1. Plaintiff KPMG Financial Advisory Services, Ltd. ("KPMG FAS") is a Bermuda LLC with its principal place of business in Hamilton, Bermuda. Compl. ¶ 2. Its parent company is a Swiss corporation. Id. The two individual plaintiffs are "British subjects resident in Bermuda," id., who were appointed official Inspectors by the Minister of Finance of Bermuda pursuant to Section 132(1) of the Bermuda Companies Act of 1981. Compl. ¶¶ 1, 10.

---

[1] In repeating Plaintiffs' statements, Defendant does not, of course, concede the accuracy of any factual allegation or legal conclusions set forth in the Complaint or declarations filed by Plaintiffs. Rather, these allegations are assumed true – as they must be – for purposes of this Motion to Dismiss only.

2

The targets of the Bermuda Government's investigation were twelve Bermuda companies, IPOC International Growth Fund Limited ("IPOC") and eleven of its affiliates.  Compl. ¶ 1.  Recent press reports have placed IPOC at the apex of a network of shell companies involved in laundering the proceeds of tainted Russian privatizations and official bribery and corruption involving Russian officials.  See David Crawford, Glenn R. Simpson, and Gregory L. White, *Close Putin Ally Implicated in Probe into Laundering*, Wall Street Journal, Dec. 2, 2005, at A3 (attached at Tab A).[2]

Plaintiffs' appointment as Inspectors of the Bermuda Government required them to report to the Bermuda Government                                                Compl. ¶ 10.  Plaintiffs claim to have been assisted in this task by the company's United Kingdom affiliate, KPMG LLP UK; together, the Bermuda company and the British company have obtained access to IPOC's business records and "conducted interviews of individuals who have relevant information about IPOC and its affiliates" -- presumably all in Bermuda.  See Compl. ¶ 12.

The Bermuda Government's investigation apparently began when the Bermuda Minister of Finance learned of a dispute between IPOC and LV Finance Group Limited ("LV"), a British Virgin Islands-based company; in 2003, IPOC sued LV and Alfa Group[3] in the British Virgin Islands, Zurich, Switzerland, and Geneva, Switzerland over ownership of shares in OJSC Megafon, a Russian mobile telephone operator.  See Compl. ¶¶ 7-10.  Assertions made in those foreign legal proceedings prompted the Minister to evaluate

---

[2] Although it was not attached to Plaintiffs' Complaint, this Court may properly take judicial notice of this newspaper account.  See, e.g., Washington Post v. Robinson, 935 F.2d 282, 291 (D.C. Cir. 1991); Rwanda v. Rwanda Working Group, 227 F. Supp.2d 45, 60 (D.D.C. 2002).

[3] Alfa Group appears to be another Russian business concern.

3

**REDACTED**

<u>See id.</u> ¶ 10;

Declaration of Malcolm Butterfield ¶ 5. Notably, there is no allegation that IPOC conducts any business activities in the United States, nor that the conduct of any United States company, citizen, or resident was the subject of the Bermuda Government's investigation.

Plaintiffs apparently first began to have concerns over their allegedly confidential documents in July, 2005. During the Zurich arbitration between the Russian companies vying for ownership of the mobile telephone concern, LV allegedly submitted papers that included material from Plaintiffs' "internal working papers." Compl. ¶ 14. According to Plaintiffs, in the wake of LV's submission, Plaintiffs and KPMG UK LLP made unspecified efforts to ascertain how the disclosure had been made. <u>See id.</u> None of these efforts are alleged to have taken place in the United States.

The only apparent event in the Complaint connecting this dispute to the United States took place on October 18, 2005, when, Plaintiffs allege, "a bundle of papers was delivered anonymously to the Montvale, New Jersey office of KPMG International's U.S. member firm, KPMG LLP." Compl. ¶ 15.

4

REDACTED

<u>**ARGUMENT**</u>

**I.   THE COMPLAINT SHOULD BE DISMISSED UNDER THE DOCTRINE OF**
*FORUM NON CONVENIENS.*

Plaintiffs have filed this lawsuit in the United States even though: (i) virtually all of

the allegedly wrongful conduct giving rise to the case took place in Bermuda; (ii) the Plaintiffs are

Bermudian and British citizens operating under an appointment by the Government of Bermuda;

(iii) the harm they assert flows almost entirely to the Bermudian sovereign; (iv) Plaintiffs readily

acknowledge that "Bermuda has a strong interest in this matter," Pls. Reply Mem. of P & A. in

Further Support of Plaintiffs' Motion for Expedited Discovery at 7; (v) Plaintiffs have submitted a

lengthy affidavit detailing Bermuda common and statutory law and urge the Court to interpret and

enforce that law; and (vi) Plaintiffs concede that "[t]here is no compelling matter of interest to the

5

REDACTED

U.S. public implicated by the documents [allegedly taken by Defendant]." Mem. of P & A in Support of Mot. for Reconsideration or Modification of the Court's Order Unsealing the Case File ("Mot. For Reconsideration"), at 5.

Any one of these circumstances, standing alone, might well be sufficient to render Plaintiffs' choice of this forum improper under the *forum non conveniens* doctrine. Collectively, these facts overwhelmingly favor dismissal. And, unlike many cases subject to a *forum non conveniens* challenge, here it cannot reasonably be disputed that Bermuda is an adequate alternative forum in which the Bermudian plaintiffs may litigate this Bermudian dispute.

A.    This Court Has Broad Discretion to Dismiss for *Forum Non Conveniens*.

Under the doctrine of *forum non conveniens*, a district court may "dismiss an action over which it has jurisdiction when there is an adequate alternative forum in which the case can be more conveniently heard." BPA Int'l, Inc. v. Kingdom of Sweden, 281 F. Supp. 2d 73, 84-85 (D.D.C. 2003) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947)). A district court's discretion to dismiss on *forum non conveniens* grounds is unusually broad. It is subject to only "limited" review, and may be reversed only for a "clear abuse of discretion." Nemariam v. Federal Democratic Republic of Ethiopia, 315 F.3d 390, 393-95 (D.C. Cir. 2003) (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 257 (1981)); TMR Energy Ltd. v. State Property Fund of Ukraine, 411 F.3d 296, 303 (D.C. Cir. 2005) ("We may reverse a forum non conveniens determination of the district court only for a 'clear abuse of discretion.'").

The threshold inquiry on a *forum non conveniens* motion "is whether there is an adequate alternative forum where the plaintiff may bring his claims." BPA Int'l, 281 F. Supp. 2d at 85 (citing Piper Aircraft, 454 U.S. at 255 n.22). If the Court finds that such a forum exists, it then "should balance the private interests of the litigants and the public interest to determine

6

whether a motion to dismiss should be granted. The weight of either the private interest factors or the public interest factors alone may be cause for dismissal." Id. (citing Gulf Oil, 330 U.S. at 508, Jackson v. American Univ. in Cairo, No. 01-5311, 2002 WL 31818236, at *1 (D.C. Cir. 2002), and Piper Aircraft, 454 U.S. at 257)).

      **B.**      **The Bermudian Plaintiffs' Choice of a United States Forum Is Entitled to Little Deference.**

      As an initial matter, Defendant notes that this Court need give no credit to Plaintiffs' efforts at international forum shopping. Plaintiffs, all foreign citizens, simply are not entitled to the same level of deference afforded United States plaintiffs in evaluating their choice of forum. Under the test enunciated by the Supreme Court in Piper Aircraft, foreign plaintiffs who file cases in the United States presumptively do not do so for convenience, but rather in an attempt to avail themselves of advantageous United States law:

> The District Court's distinction between resident or citizen plaintiffs and foreign plaintiffs is fully justified. In Koster, the Court indicated that a plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum. 330 U.S. at 524. When the home forum has been chosen, it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable. Because the central purpose of any forum non conveniens inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference.

Piper Aircraft, 454 U.S. at 255-56; see also BPA Int'l, 281 F. Supp. at 85 ("While a plaintiff's choice of forum is usually given a strong presumption, this factor carries much less weight when the plaintiff is also a stranger to the forum." (citing Piper Aircraft, 454 U.S. at 256)). Where a foreign plaintiff has chosen to sue in the United States, "a plausible likelihood exists that the selection was made for forum-shopping reasons, such as the perception that United States courts award higher damages than are common in other countries. Even if the U.S. district was not

chosen for such forum-shopping reasons, there is nonetheless little reason to assume that it is convenient for a foreign plaintiff." Iragorri v. United Technologies Corp., 274 F.3d 65, 71 (2d Cir. 2001) (en banc).

      C.     Bermuda Plainly Is an Adequate Alternative Forum for this Dispute.

There is no reason why Plaintiffs could not have commenced this action against Defendant in Bermuda, and no doubt that Bermuda provides an adequate forum for litigation of this case.

The Court's inquiry into the adequacy of the alternative forum ordinarily "will be satisfied when the defendant is 'amenable to process' in the other jurisdiction." El-Fadl v. Central Bank of Jordan, 75 F.3d 668, 677 (D.C. Cir. 1996). It is well settled that "[a] foreign forum is not inadequate merely because it has less favorable substantive law, because it employs different adjudicative procedures, or because of general allegations of corruption in the judicial system." Id. at 678 (internal citations omitted).

Here, there is no question that Bermuda is an available alternative forum. As established by the Declaration of David R. Kessaram – the President of the Bermudan Bar Association and a experienced commercial litigator – submitted in support of this Motion, the allegations of the Complaint appear sufficient to support the exercise of jurisdiction over Defendant under Bermuda law. See Kessaram Decl. at ¶ 5. Moreover, each of the three causes of action asserted by Plaintiffs is recognized under Bermuda common law (which derives largely from British common law). See id. at ¶¶ 4-7. Still further, injunctive relief – both preliminary and permanent – is available under Bermudan law. See id. at ¶ 7.

Indeed, United States courts repeatedly have held that the Courts of Bermuda are adequate for plaintiffs to seek redress of grievances originally filed in the United States. See, e.g.,

Rahl v. Bande, 328 B.R. 387, 405 (S.D.N.Y. 2005) (citing evidence that "Bermuda unquestionably has an independent judiciary and the judicial procedures of its courts satisfy due process" and concluding that Bermuda constituted adequate alternative forum); Kempe v. Ocean Drilling & Exploration Co., 876 F.2d 1138, 1145-46 (5th Cir. 1989) (noting that Bermuda courts permitted litigation of fraud claim and affirming finding that Bermuda was adequate forum).

Bermuda plainly is an available alternative forum in which to litigate this dispute. Accordingly, the next step in *forum non conveniens* analysis is to determine whether the public and private interests weigh in favor of dismissal.

**D.     The Public and Private Interest Factors Favor Dismissal.**

Although, as Plaintiffs admit, "Bermuda has a strong interest in this matter," the District of Columbia -- indeed, the United States -- has no appreciable interest in the adjudication of this lawsuit.  Pls. Reply Mem. of P & A. in Further Support of Motion for Expedited Discovery at 7. None of the plaintiffs is a United States citizen or resident.  Almost all of the witnesses are located in Bermuda and elsewhere abroad; most of the relevant documents will be located abroad; and it is all but certain that Bermuda law applies entirely or in large part to the claims -- indeed, even at this early stage of the litigation, Plaintiffs already have submitted their first affidavit on Bermuda law to the Court.  Accordingly, the public and private interest factors to be evaluated under the Gulf Oil test favor dismissal.

**1.     Public Interest Factors.**

In determining whether to dismiss for *forum non conveniens*, "[t]he public interest factors to consider are the desirability of clearing foreign controversies from congested dockets, the extent of any local interest in resolving the controversy, and the ease with which the present forum will be able to apply the laws of an unfamiliar jurisdiction." Atlantic Tele-Network v. Inter-

American Development Bank, 251 F. Supp. 2d 126, 137 (D.D.C. 2003). Each factor overwhelmingly favors dismissal.

First, dismissal is proper where, as here, there is "no reason to believe that the District of Columbia or its citizens has an interest in having this litigation occur here." Croesus EMTR Master Fund L.P. v. Federative Republic of Brazil, 212 F. Supp. 2d 30, 40 (D.D.C. 2003). In this case, as in Croesus EMTR Master Fund, "[n]one of the events in question occurred in the District of Columbia . . ." Id.[4] To the contrary, Plaintiffs' Complaint depends almost entirely on an examination of events taking place in Bermuda -- the factual center of this case -- where Plaintiffs are located, where almost all of the confidential documents were allegedly disseminated, and where the entirety of Plaintiffs' alleged damages were incurred -- particularly their asserted "irreparable" harm, which consists solely of Plaintiffs' ability to complete their duties as Inspectors under Bermuda law. As both the Supreme Court and the D.C. Circuit have noted, "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." Pain, 637 F.2d at 782; see also Gulf Oil Corp., 330 U.S. at 508-09 (same).

Second, this case will depend in large part, if not entirely, on the interpretation and application of Bermuda law. To the extent Plaintiffs have standing at all to bring this action, it is because of their appointment under the Bermuda Companies Act of 1981. Even at this early stage of the case, Plaintiffs have already submitted a declaration on Bermuda law in an effort to persuade the Court to apply Bermuda confidentiality protections to this case. See Declaration of Delroy B.

_____

[4] See also Pain v. United Tech. Corp., 637 F.2d 775, 792 (D.C. Cir. 1980) (dismissing lawsuit where "the most striking feature of this case is the lack of any significant contacts between the event in dispute and the forum chosen by the plaintiffs in which to litigate the consequences of that event"); Atlantic Tele-Network, 251 F. Supp. 2d at 137 (dismissal on forum non conveniens grounds proper because "[t]he District of Columbia has no connection at all with the controversy").

10

Duncan (the "Duncan Declaration").  As if previewing what the Court, the parties, and the jury will face if this Court elects to retain jurisdiction, the Duncan Declaration sets forth a lengthy and detailed description of the contours of Bermudan confidentiality law, which goes so far as to quote extensively from the British House of Lords interpreting the laws of the United Kingdom.  See id. at ¶ 4 (setting forth extensive quotes from Lords Thankerton and Macmillan in a 1932 case involving governmental inspections).  Indeed, it is to avoid the Court having to wade through disquisitions on abstruse issues of foreign law that "lack of familiarity with the governing substantive law also weighs in favor of dismissal." Croesus EMTR Master Fund , 212 F. Supp. 2d at 40-41 (D.D.C. 2003) (granting *forum non conveniens* motion because, among other things, "[a]s Plaintiffs concede, this controversy will likely be governed by Brazilian law," and thus "the Court will have to consider numerous complex issues of Brazilian law . . ."); see also Lempert v. Republic of Kazakhstan, 223 F. Supp. 2d 200, 204 (D.D.C. 2002) ("it appears that Kazakhstan would indeed be the appropriate forum to apply Kazakhstan law . . .").

Moreover, it appears at this early stage of the litigation that a number of issues of Bermuda law – Plaintiffs' standing to bring their claims as Bermudian Government Inspectors, for example – will be issues of first impression under Bermuda law, further militating in favor of allowing a Bermudian court, and not this one, to decide them.  See, e.g., Base Metal Trading SA v. Russian Aluminum, 253 F.Supp.2d 681, 712 (S.D.N.Y. 2003) (noting that courts should "avoid[] difficult problems in conflict of laws and the application of foreign law"); Armco Inc. v. North Atlantic Ins. Co. Ltd., 68 F.Supp.2d 330, 342 (S.D.N.Y. 1999) ("Among the public factors to be considered by a Court in evaluating a forum non conveniens motion [is the] . . . interest in issues of foreign law being decided by foreign tribunals").

11

*Third*, it is undisputed that Bermuda's interest in this litigation overwhelms any conceivable interest of the United States. As Plaintiffs readily acknowledge, "Bermuda has a strong interest in this matter." Reply Mem. of P & A. in Further Support of Plaintiffs' Motion for Expedited Discovery at 7. At the same time, Plaintiffs concede that "[t]here is no compelling matter of interest to the U.S. public implicated by the documents [at issue] in this case." Mot. for Reconsideration, at 5. As such, this case squares perfectly with Croesus EMTR Master Fund, which this Court dismissed on *forum non conveniens* grounds in the absence of any "allegation that fundamental issues of American policy are implicated by this lawsuit, or that the U.S. government played any role in the events at issue." 212 F. Supp. 2d at 40 (also noting that dismissal was proper because "[t]he marginal nature of the United States' interest stands in stark contrast to the magnitude of Brazil's interest"); BPA Int'l, 281 F. Supp. 2d at 86 ("The local community [of D.C.] is unlikely to have any special interest in this litigation whereas the citizens of Sweden have a much more significant interest because the case involves Swedish corporations and the Kingdom of Sweden itself, and stems almost entirely from events that occurred in Sweden."). The public interest factors alone compel dismissal of this case.

### 2. Private Interest Factors.

Where, as here, the public factors decisively favor dismissal for *forum non conveniens*, there is no need for the Court to analyze the private interests — the case is properly dismissed based solely on the public interest. See BPA Int'l, 281 F. Supp. 2d at 85 ("The weight of either the private interest factors or the public interest factors alone may be cause for dismissal.") (citing Jackson, 2002 WL 31818236 at *1); Mutambara v. Lufthansa German Airlines, 2003 WL 1846083, at *3 (D.D.C. 2003) ("Thus, either private interest factors or public interest factors can require dismissal.") (citing Jackson). In any event, the private interests further support

12

dismissal of this action. The private interests relevant to the *forum non conveniens* inquiry include:

> (1) relative ease of access to sources of proof; (2) availability of
> compulsory process for attendance of unwilling witnesses; (3) costs
> of obtaining attendance of willing witnesses; (4) possibility of
> viewing the premises; (5) other practical problems that impact
> efficiency and cost of a trial; and (6) enforceability of a judgment if
> one is obtained.

Mutambara v. Lufthansa German Airlines, 2003 WL 1846083, at *3 (D.D.C. 2003) (citing

American Dredging Co. v. Miller, 510 U.S. 443, 448 (1994).

The principal private interest factors at issue here concern the location of, and

access to, witnesses and documents. Where relevant evidence is located in alternative forum,

dismissal for *forum non conveniens* is proper. See Atlantic Tele-Network, 251 F. Supp. 2d at 137

(dismissal for forum non conveniens proper because "[v]irtually all of the relevant evidence is in

Guyana."); BPA Int'l, 281 F. Supp. 2d at 86 (because Sweden-domiciled witnesses predominated,

"obtaining witnesses' attendance will be significantly less costly if the case were heard in Sweden

rather than the District"); see also Croesus EMTR Master Fund, 212 F. Supp. 2d at 38-39 (noting

that "[t]he parties will also have to examine documents of the Brazilian government, which are

located in Brazil.").

Because Plaintiffs' claims arise out of allegedly wrongful acts taking place in

Bermuda, access to sources of proof will be easier in Bermuda than in the United States. Most of

the potential witnesses will be located in Bermuda. Documentary proof will be scattered

throughout Bermuda, the United Kingdom, Switzerland, and Russia. Testimony of officials of the

Government of Bermuda may well be required – indeed, Plaintiffs have themselves already

injected the Ministry of Finance into this controversy.

13

Significantly, according to the allegations of the Complaint, non-party potential witnesses involved in earlier alleged disclosures of Plaintiffs' confidential documents are located in Bermuda, the British Virgin Islands, Switzerland, and Russia. All of these witnesses are beyond the reach of the subpoena power of this Court. Many of them, however, may be subject to the subpoena power of Bermuda courts because of their incorporation in Bermuda. "[T]o fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants." Gulf Oil, 330 U.S. at 511; see also Duha v. Agrium, Inc., 340 F. Supp. 2d 787, 797 (E.D. Mich. 2004) ("of all the private interest factors, the relative ability of the forums to compel the attendance of significant unwilling witnesses at trial often is considered the most important factor, because the inability to present live testimony may result in an unfair trial and unfairness to the defendants").[5]

Finally, the applicability of foreign law also imposes an unnecessary burden on Defendant when litigating in this Court. Where foreign law is to apply to the case, one of the private party interests to be considered is the burden on the parties of presenting expert testimony on foreign law. See Croesus EMTR Master Fund, 212 F. Supp. 2d at 38-39 (noting that, because case "will center around an analysis of Brazilian legal issues . . . the parties will have to obtain testimony from Brazilian law experts and from members of the Brazilian government, most of whom are likely to live in Brazil."). On balance, therefore, the private interests also favor dismissal of this lawsuit.

---

[5] At this stage of the case, Defendant need make no greater showing of what its defense will be. See Mercier v. Sheraton Int'l, Inc., 981 F.2d 1345, 1356 (1st Cir. 1992) (rejecting rule that defendant affirmatively demonstrate, by affidavit, the unavailability of a foreign witness and the significance of the witness's testimony: to do so "would tend to inflict an impossible burden on defendants who are seeking dismissal for the very reason that they cannot compel evidence, including the evidence necessary to argue for dismissal" (citations omitted)).

**II.    THE COMPLAINT MUST BE DISMISSED UNDER FRCP 12(b)(7) and 19 FOR FAILURE TO JOIN THE GOVERNMENT OF BERMUDA, AN INDISPENSABLE PARTY.**

Plaintiffs' Complaint also must be dismissed for a second, independent reason: Plaintiffs have failed to join the Government of Bermuda, an indispensable party under Rule 19 of the Federal Rules of Civil Procedure.

Plaintiffs come to this Court as Bermuda-based official Inspectors under commission from the Bermudian Minister of Finance, and seek to vindicate claims of right allegedly arising by virtue of their commissions. Indeed, the Government of Bermuda has taken the extraordinary step of writing to this Court to "support[] the Inspectors in their efforts to seek all available remedies" for "a calculated attempt to attack the integrity of Bermuda's statutory processes." See Mot. For Reconsideration, at Exhibit 1, page 1 (November 21, 2005 Letter from Donald A. Scott, Bermudian Financial Secretary, to the Honorable Paul L. Friedman).

Yet remarkably, in spite of the gravity of this supposed "attack," the Government of Bermuda is not a party to this case -- in fact, the Government has directly told the Court that "the Government of Bermuda is not willing to be involved or joined in any direct way with the proceedings in the US Court." Id. at 2. Plaintiffs are, in other words, a stalking horse for the Government of Bermuda, the real stakeholder in this matter, which has carefully distanced itself from these proceedings, presumably so that it will not be bound by their outcome. Rule 19 does not permit the judicial waste and prejudice that come from such efforts to engineer "two bites at the apple."

A court considering a motion to dismiss for failure to join an indispensable party pursuant to Rule 19 must make a three-step inquiry: (1) whether the absent party is necessary to the litigation; (2) if so, whether the absent party can be joined in the litigation; and (3) if joinder is

15

infeasible, whether the lawsuit can nevertheless proceed in good conscience. See Kickapoo Tribe of Indians of the Kickapoo Reservation in Kansas v. Babbitt, 43 F.3d 1491, 1494 (D.C. Cir. 1995). "The rule calls for a pragmatic decision based on practical considerations in the context of particular litigation." Id. at 1495. Here, there can be but one pragmatic result: the Government of Bermuda is a necessary party to this case, but one that has refused to be joined, and cannot be forced to. Proceeding in this Court without the Government would produce an inadequate judgment that could not conclusively settle the rights and obligations of the interested parties (while still forcing this Court to opine on statutory matters affecting the Bermudian sovereign), and would expose Defendant to relitigation of issues decided by this Court and, thus, the possibility of inconsistent judgments. In equity and good conscience, this action cannot proceed.

> **A.**  **The Government of Bermuda is a Necessary Party under Rule 19(a).**

Rule 19(a) of the Federal Rules of Civil Procedure provides, in relevant part, that a party is necessary to the litigation if

> the [party] claims an interest relating to the subject of the action and is so situated that the disposition of the action in the [party's] absence may (i) as a practical matter impair or impede the [party's] ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the [party's] claimed interest.

Id. Here, the government of Bermuda is plainly a necessary party.

> **1.**  **The Government of Bermuda Possesses a Legal Interest in this Case.**

As an initial matter, while Plaintiffs carefully endeavor to characterize the interests at stake in this litigation as the interests of KPMG FAS and two of its partners, they cannot camouflage the very real legal interest of the Government of Bermuda in this case. Plaintiffs purport to act as statutorily-appointed Inspectors of the Government of Bermuda operating under

16

commission from the Bermudian sovereign, Compl. ¶¶ 2, 10, and claim to seek their extraordinary

relief in defense of the Bermudian public interest, Mot. For Reconsideration at 6. To this end, they

invoke principles of "international comity" in favor of the Government of Bermuda, id. at 8.

Plaintiffs have already notified this Court that the Bermudian Minister of Finance "is taking an

interest" in this matter and may opine on the case's "role and importance in the statutory scheme."

Letter from Roberta Koss to the Honorable Paul L. Friedman (Nov. 17, 2005 ). Indeed, as noted

earlier, the Government of Bermuda, through the Ministry of Finance, has taken the extraordinary

step of writing directly to this Court to "support[] the Inspectors in their efforts to seek all available

remedies" for "a calculated attempt to attack the integrity of Bermuda's statutory processes." Mot.

For Reconsideration at Exhibit 1, page 1 (November 21, 2005 Letter from Donald A. Scott,

Bermudian Financial Secretary, to the Honorable Paul L. Friedman). Plaintiffs cannot credibly

dispute that the Government of Bermuda possesses a very real legal interest that will be affected

by the outcome of this case.

Indeed, two cases cited in Plaintiffs' own Duncan Declaration make it clear that

despite Plaintiffs' efforts to confect a lawsuit in which they claim to hold the judicially-

enforceable rights of confidentiality under the Bermuda Companies Act, it is not Plaintiffs but the

Government of Bermuda that possesses the real legal interest in this case. In Hearts of Oak

Assurance Co., Ltd. v. Attorney-General, [1932] App. Cas. 392, the chief authority cited by Mr.

Duncan, it is noteworthy that the argument for confidentiality of Inspectors' reports was not

asserted by the Inspectors, *who were not even parties to the case*. Rather, the argument was made,

as Lord Macmillan noted, by "the Attorney General, who appears in the public interest." Id. at

400. Similarly, in In re an Inquiry into Mirror Group Newspapers plc, [2000] Ch. 194, a second

17

case cited by Mr. Duncan, the Secretary of State[6] "applied to be joined as a party," and was permitted to do so. Id. at 209.

Finally, Defendant notes that in Soden v. Burns, 1 W.L.R. 1512 (1996), a leading Companies Act confidentiality case that is curiously absent from Mr. Duncan's Declaration, the court noted that "transcripts of evidence given to inspectors belong to the [U.K.] department" of Trade and Industry, which appointed the Inspectors, *not to the Inspectors themselves*. Id. at 1528. Thus, to the extent that courts have decided the issue[7], the absentee Government of Bermuda possesses both the confidentiality and property interests asserted in the Complaint. In contrast, the Inspectors and their firm, who are the sole Plaintiffs in this litigation, appear to have no such legally protected interest *at all*.

> **2.    Absent Joinder of the Government of Bermuda, Defendant Will Be Subject to a Substantial Risk of Duplicative Litigation and Inconsistent Legal Obligations.**

In the absence of the Government of Bermuda as a party to this case, Defendant faces an obvious risk of incurring inconsistent legal obligations by virtue of later litigation with the Government of Bermuda. See Owens-Illinois, Inc. v. Meade, 186 F.3d 435, 441 (4th Cir. 1999) (noting "high likelihood of incongruous results"; "the increased potential for inconsistent judgments is grounds for finding a non-joined party necessary").

---

[6] Under the United Kingdom Companies Act 1985 (as amended by Companies Act 1989), the Secretary of State is responsible for the appointment of Inspectors – a function analogous to the appointing power of the Minister of Finance in this case under the Bermuda Companies Act. See Re an Inquiry into Mirror Group Newspapers plc, [2000] Ch. 194 at 194 ("In 1992 the Secretary of State appointed Inspectors").

[7] Plaintiffs believe that this is the only case on point with respect to whether KPMG FAS and the inspectors actually own that which they claim was stolen from them. The case obviously does not support their position. Thus, it appears, for example, that Plaintiffs have asserted claims for the conversion of someone else's property.

The Government of Bermuda is not a party to this action and refuses to be one; there thus is a substantial risk that even if Defendant prevails in this case, it will be forced to relitigate the very same issues in a subsequent lawsuit brought by the Government. Bermuda is obviously a sovereign entitled to sovereign immunity; as such, there is grave doubt that the Government will be bound by the results of this action if it is not joined as a party, particularly where it has unequivocally refused to participate in the case. A foreign sovereign will not be found to have waived its immunity unless it has clearly and unambiguously done so." World Wide Minerals, Ltd. v. Republic of Kazakhstan, 296 F.3d 1154, 1162 (D.C. Cir. 2002) See also Maritime Int'l Nominees Establishment v. Republic of Guinea, 693 F.2d 1094, 1100 n.10 (D.C. Cir. 1982) (holding that under the FSIA, Congress contemplated waivers of a "specific and explicit nature"); Aquamar S.A. v. Del Monte Fresh Produce N.A., Inc., 179 F.3d 1279, 1292 (11th Cir. 1999) ("An express waiver under section 1605(a)(1) must give a clear, complete, unambiguous, and unmistakable manifestation of the sovereign's intent to waive its immunity." (internal quotation marks omitted)).[5] Indeed, Defendant notes that even if the present Plaintiffs were found to be acting as instrumentalities of the Government of Bermuda, enforcing this Court's judgment against the sovereign itself would be highly problematic. See, e.g., McKesson Corp. v. Islamic Republic of Iran, 52 F.3d 346, 351 (D.C. Cir. 1995) (baseline presumption in Foreign Sovereign Immunities Act matters is that government instrumentalities and the sovereign itself operate independently).

---

[5] 28 U.S.C. § 1605 provides for exceptions to the general rule of immunity where (1) the state has waived immunity, (2) the state has engaged in commercial activity, (3) property taken in violation of international law is at issue, (4) real property in the United States acquired by succession or gift is at issue, (5) foreign officials have committed specific categories of torts inside the United States, (6) the parties have agreed to U.S. arbitration, or (7) the case concerns maritime liens. None of these exceptions apply to this case.

The Government of Bermuda, a "necessary party," will almost certainly not be bound by the judgment of this Court unless it is joined as a party to this case; because of this, it must be joined. See Davis v. United States, 343 F.3d 1282, 1292 (10th Cir. 2003) (risk of inconsistent legal obligations present where absentee "would not be bound by the judgment in this case and could initiate litigation against Defendants").

**B.    Joinder Is Infeasible:  The Government of Bermuda Is a Sovereign and Has Refused to Be Joined.**

Once a court has determined that a party is "necessary" under the standards set out in Rule 19(a), the second step in Rule 19 dismissal analysis is to determine "whether the absent party can be joined in the litigation." Kickapoo Tribe, 43 F.3d at 1494; see also Fed. R. Civ. P. 19(a) ("if the [necessary] person has not been so joined, the court shall order that the person be made a party"). Here, however, the Court obviously cannot "order" the Government of Bermuda to join this action. The Government of Bermuda is a foreign sovereign and, thus, is entitled to sovereign immunity; it may not be involuntarily joined under Rule 19. See Kickapoo Tribe, 43 F.3d at 1495-96 (party with sovereign immunity cannot be joined under Rule 19 absent waiver or abrogation).

The Government of Bermuda cannot be ordered to join this lawsuit, nor has it expressed a willingness to be joined voluntarily; to the contrary, as noted above, at the time it sought to intercede by letter on the Plaintiffs' behalf, the Government expressly told this Court "the Government of Bermuda is not willing to be involved or joined in any direct way with the proceedings in the US Court." Mot. for Reconsideration at Exhibit 1, page 2.  As such, the Government is a necessary party, but not one that will be voluntarily or involuntarily joined.

**C. This Action May not Proceed in "Equity and Good Conscience" Without Joinder of the Government of Bermuda.**

Once a court has concluded that a party is necessary to the litigation under Rule 19(a) but cannot be ordered to join, the final step in the Rule 19 dismissal analysis is to determine "whether the lawsuit can nevertheless proceed 'in equity and good conscience.'" Kickapoo Tribe, 43 F.3d at 1494. Rule 19(b) of the Federal Rules of Civil Procedure provides guidance for the court's decision on this point:

> The factors to be considered by the Court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Id.

While, as discussed below, a proper balancing of the four Rule 19(b) factors requires dismissal of this case for failure to join an indispensable party, the Court need not go so far; the involvement of Bermuda – a necessary, absent sovereign that refuses to be joined – is itself enough to end the matter and mandate dismissal. The D.C. Circuit has held that, in such cases, the district court's inquiry is "circumscribed," explaining that

> [w]hile Rule 19(b) sets forth four non-exclusive factors for the courts to consider . . . this court has observed that 'there is very little room for balancing of other factors' set out in Rule 19(b) where a necessary party under Rule 19(a) is immune from suit because immunity may be viewed as one of those interests "compelling by themselves."

Kickapoo Tribe, 43 F.3d at 1496-97 (internal quotes omitted). See also Fluent v. Salamanca Indian Lease Auth., 928 F.2d 542, 548 (2d Cir. 1991) (same; notes the "paramount importance accorded the doctrine of sovereign immunity under [r]ule 19" (alteration in original)); Davis, 343

F.3d at 1293 (sovereign immunity of absent party a "compelling" interest favoring dismissal);

Enterprise Mgmt. Consultants, Inc. v. United States, 883 F.2d 890, 894 (10th Cir. 1989) (same);

Wichita and Affiliated Tribes of Oklahoma v. Hodel, 788 F.2d 765, 777 n.13 (D.C. Cir. 1986)

(noting rule). Because of this, the Court thus need go no further to conclude that dismissal is

warranted. However, in the event that this Court elects to conduct a full analysis of the Rule 19(b)

factors, those factors also all favor dismissal here.

     *First,* and most important, Defendant would be subject to substantial and manifest

prejudice if it were forced to litigate this case against Plaintiffs and then, if Defendant prevailed, to

face the prospect of relitigating the very same issues against the Government of Bermuda, which

commissioned Plaintiffs as Inspectors. See Davis, 343 F.3d at 1292 (upholding dismissal where

absentee "would not be bound by the judgment in this case and could initiate litigation against

Defendants"); Teamsters Local Union No. 171 v. Keal Driveway Co., 173 F.3d 915, 918-19 (4th

Cir. 1999) (permitting suit to continue without unjoined party could subject joined party to

"double-bind" of inconsistent judgments); Schlumberger Industries v. National Surety Corp., 36

F.3d 1274, 1286-87 (4th Cir. 1994) (holding parties were indispensable where potential existed for

different interpretations of law or different findings of fact in subsequent litigation; party "will be

unable to use [a] finding preclusively" in subsequent action against one who "was not a party to

the first case"); cf. Sierra Club v. Leathers, 754 F.2d 952 (11th Cir. 1985) (transferring action

where joinder of state under Rule 19 was "problematic" – "the possibility of inconsistent

adjudications [was] the key to this case"). There are no protective provisions that the Court may

order to prevent this prejudice.

     *Second,* a judgment in this action without the participation of the Government of

Bermuda may, in fact, also prejudice the Government, which would suffer the practical effects of

an adverse judgment even if the Government is not, as a sovereign, technically bound by it and could seek to relitigate the matter. The Supreme Court long ago refused to permit lawsuits to proceed under such circumstances. See California v. Southern Pacific Co., 157 U.S. 229, 257 (1895) (dismissing original jurisdiction action with effects on sovereign, noting that "it does not comport with the gravity and finality which should characterize such an adjudication to proceed in the absence of parties whose rights would be in effect determined, even though they might not be technically bound in subsequent litigation in some other tribunal"); cf. Kickapoo Tribe, 43 F.3d at 1495 (Rule 19 calls for a pragmatic decision based on practical considerations). Again, there are no protective provisions that could prevent this prejudice.

Third, any judgment rendered by this Court in the absence of the Government of Bermuda would be "inadequate," for any holding of this Court could simply be relitigated by the Government in an alternative forum. As the Tenth Circuit has pointed out, the "adequacy" factor "is intended to address the adequacy of the dispute's resolution" – that is, "the public stake in settling disputes by wholes, whenever possible." Davis, 343 F.3d at 1293.

Where, as in this case, "a judgment rendered in [a party's] absence could well lead to further litigation and possible inconsistent judgments[, t]hat judgment . . . would be inadequate." Id.; see also National Union Fire Ins. Co. v. Rite Aid of South Carolina, Inc., 210 F.3d 246, 253 (4th Cir. 2000) (noting "the public interest in avoiding piecemeal and inefficient litigation" (citation omitted)); Weisberg v. United States, 631 F.2d 824, 830 (D.C. Cir. 1980) (ruling party indispensable due to needless potential for duplicative litigation in event of party's absence). In particular, if an affected sovereign has not consented to be bound, thereby leaving open the possibility of later litigation, courts do not hesitate to dismiss. See, e.g., Arizona v. California, 298 U.S. 558, 571-72 (1936) (declining to entertain action between states where the United States did

23

not consent to be sued and "because of the absence of the United States, [the judgment] could have no finality"); Texas v. New Mexico, 352 U.S. 991, 991 (1957) (per curiam) (adopting Special Master's recommendation and dismissing action "because of the absence of the United States as an indispensable party"); Keweenaw Bay Indian Community v. Michigan, 11 F.3d 1341, 1347 (6th Cir. 1993) (affirming dismissal of action where Indian tribes possessed sovereign immunity and thus were "necessary parties that cannot be made parties to the action"). Dismissal is similarly appropriate here.

Fourth, as discussed above with respect to forum non conveniens, Plaintiffs already have an adequate forum in Bermuda in which to seek their remedy – presumably a forum in which the Government of Bermuda will be less reluctant to join as a party. Where a plaintiff has failed to join a necessary party, the availability of an alternative forum weighs heavily in favor of dismissal. See Kaneko Shoji, Ltd. v. Katsura Enter., Inc., No. 95-35368, 1996 WL 422879, at *2 (9th Cir. July 29, 1996) (unpublished disposition).[9]

Thus, even if this court considers the Rule 19(b) factors – and, as noted above, it need not do so where the analysis is "circumscribed" because an absent sovereign is a necessary party – the refusal of the Government of Bermuda to join this action is ample reason to dismiss this case. While the Government's Inspectors may complain that this will deprive them of their day in a United States court, they have only their master to blame. See Adams v. Bell, 711 F.2d 161, 200

---

[9] Moreover, while Plaintiff plainly possesses an adequate alternative forum in which it may litigate its dispute, even if it did not, an alternative forum is not essential for dismissal under Rule 19; as the Court of Appeals has noted, "[w]hile a court should be extra cautious in dismissing a case for nonjoinder where the plaintiff will not have an adequate remedy elsewhere, it is also important to realize that '[t]his does not mean that an action should proceed solely because the plaintiff otherwise would not have an adequate remedy, as this would be a misconstruction of the rule and would contravene the established doctrine of indispensability.'" Wichita, 788 F.2d at 777 (quoting 3A Moore's Federal Practice ¶ 19.07-2[4], at 19-153 (1984)).

(D.C. Cir. 1983) (en banc) ("An indispensable party's refusal to join, when requested, is pertinent to the issue of maintaining the action" (quoting Benjamin Kaplan, *Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I)*, 81 Harv. L. Rev. 356, 366 (1967)).

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Complaint be dismissed in its entirety.

Respectfully submitted,

December 5, 2005                    AEGIS LAW GROUP LLP

By:    Paul Rauser

Paul C. Rauser (D.C. Bar No. 461722)
Oliver Garcia (D.C. Bar No. 456600)
901 F Street, N.W., Suite 500
Washington, D.C. 20004
T: 202-737-3500
F: 202-737-3330

*Attorneys for Defendant Diligence Inc.*

25

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on December 5, 2005 by hand upon:

Roberta Koss, Esq.
Hughes Hubbard & Reed LLP
1775 Eye Street, N.W.
Washington, DC 20006-2401

Paul C. Rauser