IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KPMG FINANCIAL ADVISORY )
SERVICES LIMITED, )
MALCOLM BUTTERFIELD, and )
MICHAEL MORRISON, )
 )
      *Plaintiffs,* )
 )
v. )    Civil Action No. 05-2204 (PLF)
 )
DILIGENCE LLC )
 )
      *Defendant.* )
 )

## REPLY MEMORANDUM IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS

Relying on explicitly overruled D.C. Circuit authority and inapposite decisions from other districts, and not even once citing the leading Supreme Court case on the doctrine, Plaintiffs have failed to show why the Court should not dismiss this case on *forum non conveniens* grounds. Plaintiffs' incomplete brief relies on two principal, but mistaken contentions: *first,* that Bermuda is not an adequate alternative forum because Bermuda procedures differ in some respects from the Federal Rules of Civil Procedure; and, *second,* that this forum cannot be inconvenient because Defendant has an office here. Each contention evinces a fundamental misapprehension of the *forum non conveniens* doctrine, and runs headlong into a substantial body of caselaw, most of which Plaintiffs fail to cite. As detailed below, Plaintiffs' arguments against litigating in Bermuda — where this Bermudian dispute belongs — have no merit and should be rejected.

Plaintiffs' arguments against dismissal of this action for failure to join the Government of Bermuda are equally flawed. As with its *forum non conveniens* point, Plaintiffs'

argument that the Government has no legal interest in their investigation ignores key cases in which government counsel appeared to defend that legal interest – an omission made only more baffling by the fact that Plaintiffs themselves originally cited those cases to this Court. Moreover, while Plaintiff Inspectors now seek to recast themselves as private, fee-for-service professionals who possess the sole property interest in the materials relating to their investigation, their argument flies in the face of both the Companies Act itself and relevant case law, which clearly establish the official, administrative nature of the Inspectors' investigation. Plaintiffs certainly do not possess the sole interest in the investigative records, if indeed they possess any interest at all. Finally, Plaintiffs downplay the risk of future litigation by the Government of Bermuda. Yet they do not dispute that, at the same time, the Government of Bermuda has taken pains to ensure that it is not bound by the result of this case, thus reserving for the Government a "second bite at the apple" back in the courts of Bermuda. That is where this action properly belongs in the first place.

## ARGUMENT

I.    **THE GOVERNING CASELAW – UNMENTIONED BY PLAINTIFFS – REFUTES EACH OF PLAINTIFFS' ARGUMENTS AGAINST LITIGATING THIS BERMUDIAN DISPUTE IN BERMUDA.**

As an initial matter, it must be noted that Plaintiffs' entire *forum non conveniens* argument is predicated on a *forum non conveniens* analysis that is not only outdated, *it has been expressly overruled.* At the outset of their *forum non conveniens* discussion, Plaintiffs quote an extensive passage from Pain v. United Technologies Corp., 637 F.2d 775, 784-85 (D.C. Cir. 1980), which Plaintiffs insist lays out the proper "framework" in this Circuit for analyzing whether a case should be dismissed under the *forum non conveniens* doctrine. See Opp. at 3; see also Opp. at 8. Specifically, Plaintiffs quote (and later, cite) Pain for the proposition that only when the district court finds the private interests of the parties "to be in equipoise or near equipoise" must

2

the court "then determine whether or not factors of public interest tip the balance in favor of [a] trial in a foreign forum." Opp. at 3 (quoting Pain, 637 F.2d at 784-785); see also Opp. at 8 (citing Pain for same proposition).

But this portion of Pain was overruled a quarter-century ago by the Supreme Court's decision in Piper Aircraft Co. v. Reyno, 454 U.S. 235, 257-261 (1981). Curiously, even though Piper Aircraft is indisputably the leading modern case on the *forum non conveniens* doctrine, Plaintiffs' Opposition papers fail to cite it. In any event, as noted expressly by the D.C. Circuit, Piper Aircraft overruled "the third part of the Pain test by stating that dismissal is appropriate if the plaintiff's 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems.'" Nemariam v. Federal Democratic Republic of Ethiopia, 315 F.3d 390, 393 (D.C. Cir. 2003) (alteration in original); see also Jackson v. American Univ. in Cairo, No. 01-5311, 2002 WL 31818236, at *1 (D.C. Cir. Dec. 13, 2002) (noting that "in equipoise or near equipoise" language in Pain "is not correct in light of Piper," and further noting that Piper Aircraft "indicates that either private interest factors or public interest factors may be cause for dismissal.").

By suggesting that this Court need not even consider the public interest factors in addressing Defendant's motion, Plaintiffs have misstated the law. And, as set forth below, when analyzed using the proper legal standards, the *forum non conveniens* factors — both public and private — overwhelmingly favor dismissal to allow this Bermudian dispute to proceed in Bermuda, where it should have been filed in the first place.

A.    **Plaintiffs' Contention that Bermuda Is Not an Adequate Forum Is Not Supported by the Evidence or Relevant Caselaw.**

Plaintiffs complain that to serve Defendant in Bermuda, Plaintiffs would first have to make an application to the Bermuda Supreme Court. This mere procedural difference between

3

the United States and Bermuda does not make Bermuda an inadequate forum for this dispute. Defendant is amenable to process in Bermuda, thereby satisfying this portion of the *forum non conveniens* test.

Surprisingly, the Plaintiffs, all residents of Bermuda and acting as official Inspectors of the Bermuda government, argue strenuously that the courts of their own home country are ill-equipped to mete out justice in this dispute – a dispute in which Plaintiffs admit "Bermuda has a strong interest," arising out of acts allegedly committed almost entirely in Bermuda, against Bermuda-based official Inspectors, acting under commission from the Bermudian Minister of Finance.[1] Reply Mem. of P & A in Further Support of Pls.' Motion for Expedited Discovery, at 7. According to Plaintiffs, Bermuda is not an available alternative forum because "the ability to serve an overseas defendant with a writ of summons is dependant upon a discretionary determination by the Supreme Court of Bermuda." Opp. at 4.

However, as Defendant noted in its opening Memorandum, the question whether an adequate alternate forum exists ordinarily "will be satisfied when the defendant is 'amenable to process' in the other jurisdiction." El-Fadl v. Central Bank of Jordan, 75 F.3d 668, 677 (D.C. Cir. 1996). The Declaration of David R. Kessaram – a distinguished Bermuda litigator – submitted by Defendant in support of its Motion to Dismiss, firmly establishes that Defendant is amenable to

---

[1] Plaintiffs suggest that, because Defendant's motion is procedural, Defendant has "concede[d] that Plaintiffs' causes of action are facially valid." Opp. at 1. The suggestion is risible in light of the very first footnote in Defendant's opening Memorandum. See Mem. in Support of Mot. to Dismiss ("Defendant does not, of course, concede the accuracy of any factual allegation or legal conclusion[] set forth in the Complaint . . .") It is elementary that, on a motion to dismiss, the allegations of the complaint must be assumed true. At the appropriate juncture – and, in the appropriate forum – Defendant fully intends to vigorously contest the "fundamental soundness of Plaintiffs' claims." Opp. at 1.

4

process in Bermuda with respect to claims alleging the conduct set forth in Plaintiffs' Complaint, virtually all of which allegedly occurred in Bermuda.

Rather than attempt to rebut the Kessaram Declaration, Plaintiffs' Opposition simply ignores it. The only reference to the Kessaram Declaration is in the (Second) Declaration of Delroy B. Duncan submitted by Plaintiffs. Notably, however, Mr. Duncan *agrees* with Mr. Kessaram "that a foreign corporation such as the Defendant may lawfully be served with a writ of summons (or notice thereof) issued in the Supreme Court of Bermuda for tortious acts committed in Bermuda." (Second) Duncan Decl. ¶ 1.1. There is thus no dispute here that Defendant "is 'amenable to process' in the other jurisdiction." El-Fadl, 75 F.3d at 677.

Mr. Duncan's only counterpoint to the Kessaram Declaration on the question of Defendant's amenability to service of process in Bermuda is procedural. Yet according to Mr. Duncan, the Plaintiffs need only make the following showings in order for the Supreme Court of Bermuda to issue a writ of summons directed to Defendant:

> (a)    in relation to the underlying claim there is a serious issue to be tried; and
>
> (b)    Bermuda is clearly the appropriate forum for the trial of the action.

(Second) Duncan Decl. ¶ 1.1.

But such procedural differences do not render a foreign forum inadequate under the *forum non conveniens* doctrine. To the contrary, it is well settled that "[a] foreign forum is not inadequate merely because it . . . employs different adjudicative procedures . . . ." El-Fadl, 75 F.3d at 678 (internal citations omitted); see also BPA Int'l, Inc. v. Kingdom of Sweden, 281 F. Supp. 2d 73, 85 (D.D.C. 2003) (noting Piper Aircraft holding that "less favorable remedies in a

5

foreign jurisdiction do not preclude dismissal based on *forum non conveniens* so long as remedies are not 'clearly inadequate or unsatisfactory'").

Moreover, even assuming *arguendo* that such procedural distinctions provided a basis to conclude that Bermuda is not an adequate forum (and they do not), Plaintiffs wholly fail to explain why they would not easily establish the two-prong showing required for issuance of a writ of summons by the Supreme Court of Bermuda. *First*, if Plaintiffs' numerous statements to this Court about the strength of their claims are accurate, these Bermuda Plaintiffs should have little difficulty persuading the Supreme Court of Bermuda that "there is a serious issue to be tried." (Second) Duncan Decl. ¶ 1.1.[2] *Second*, following a *forum non conveniens* dismissal by this Court, the Supreme Court of Bermuda would surely conclude that "Bermuda is clearly the appropriate forum for the trial of this action." (Second) Duncan Decl. ¶ 1.1. Indeed, nowhere in his Declaration does Mr. Duncan opine that Plaintiffs could not make this two-prong showing.[3]

Finally, Plaintiffs wholly ignore the federal court authorities cited in Defendant's opening Memorandum holding that the Courts of Bermuda are adequate for plaintiffs to seek redress of grievances originally filed in the United States. *See, e.g.*, Rahl v. Bande, 328 B.R. 387, 405 (S.D.N.Y. 2005) (on a *forum non conveniens* motion, holding that Bermuda is an adequate

---

[2] This is especially true given the representation to this Court made by the Government of Bermuda, through the Ministry of Finance, that this case arises out of "a calculated attempt to attack the integrity of Bermuda's statutory processes." Mot. For Reconsideration at Exhibit 1, page 1 (November 21, 2005 Letter from Donald A. Scott, Bermudian Financial Secretary, to the Honorable Paul L. Friedman).

[3] Plaintiffs' further complaint that Bermuda is an inadequate forum because they will need to serve Bermudian writs of summons pursuant to the Hague Convention -- see (Second) Duncan Decl. ¶ 1.2 -- is plainly spurious and does not warrant extended discussion. *See, e.g.*, Leetsch v. Freedman, 260 F.3d 1100, 1103 (9th Cir. 2001) (district court properly granted *forum non conveniens* motion where, among other things, Germany was an adequate alternative forum because "service [of the defendant] is possible under procedures set forth under the Hague Convention.").

6

alternative forum); Kempe v. Ocean Drilling & Exploration Co., 876 F.2d 1138, 1145-46 (5th Cir.
1989) (affirming forum *non conveniens* dismissal in favor of Bermuda because, among other
things, the district court did not err in finding that Bermuda was an adequate alternative forum in
which to assert claims against defendant, a United States corporation).

In sum, Bermuda plainly is an available alternative forum in which to litigate this
dispute.

**B.     Defendant's Residence in this Forum Is of Scant Relevance to the
*Forum Non Conveniens* Inquiry.**

A second principal theme throughout Plaintiffs' Opposition is that this forum is *per
se* convenient because Defendant is headquartered here. According to Plaintiffs, "[t]he fact that
Defendant is headquartered in this district weighs strongly against dismissal." Opp. at 6.
Plaintiffs again misconstrue the doctrine of *forum non conveniens*. It is the convenience of the
Court, the public, and the witnesses that is paramount under the doctrine, not the location of the
defendant. See, e.g., Nemariam, 315 F.3d at 393 (noting that, under Piper Aircraft, "dismissal is
appropriate if the plaintiff's 'chosen forum [is] inappropriate because of considerations affecting
the court's own administrative and legal problems.'") (alteration in original); Atlantic Tele-
Network v. Inter-American Dev. Bank, 251 F. Supp. 2d 126, 136-137 (D.D.C. 2003) (*forum non
conveniens* inquiry focuses on the convenience of the Court, the public, and the witnesses).

In fact, courts have repeatedly held that "[t]he mere fact that [defendant] is
headquartered [in the forum] is simply not significant enough to justify the litigation of [an] action
in the United States." Beekmans v. J.P. Morgan & Co., 945 F. Supp. 90, 94 (S.D.N.Y. 1996).
Indeed, this point was a principal thrust of Piper Aircraft, which would have been decided
differently had the Supreme Court accepted the argument presently advanced by Plaintiffs. There,
although the defendant was a United States company sued in its home forum for alleged torts

committed abroad, the American interest in the case was "simply not sufficient to justify the

enormous commitment of judicial time and resources that would inevitably be required if the case

were to be tried here." Piper Aircraft, 454 U.S. at 260-61; see also Transunion Corp. v. PepsiCo.,

Inc., 811 F2d 127, 129 (2d Cir. 1987) (dismissing action on *forum non conveniens* grounds even

though defendant was sued in its home forum, some acts at issue occurred in forum, and some

witnesses and documents were located in forum); Potomac Capital Inv. Corp. v. KLM, Civ. No.

97-8141, 1998 WL 92416 at *10 (S.D.N.Y. Mar. 4, 1998) ("The fact that [defendant] . . . has its

American headquarters here is of no consequence [on a *forum non conveniens* motion], since the

tort and resulting damage both occurred elsewhere").

  **C.**  **Plaintiffs' Own Prior Statements to This Court Establish that the**
     **Public Interest Factor Compels Dismissal of this Action.**

  Unsurprisingly, Plaintiffs attempt to downplay the public interest factors to be

considered on a *forum non conveniens* motion. Plaintiffs, relying on an overruled portion of the

D.C. Circuit's decision in Pain, erroneously assert that "the Court need not go on to consider the

public interest factors if it finds that the private interest factors are in equipoise or weigh against

dismissal." Opp. at 8. In addition to relying on overruled Circuit authority, Plaintiffs now attempt

to repudiate *sub silencio* their own prior statements to this Court, and fail to explain anywhere in

their Opposition papers why they are now taking positions flatly contrary to statements made so

urgently to this Court just last month.

  **1.**  **Plaintiffs' Own Prior Statements to this Court Make Clear**
     **That Bermuda's Interests in this Dispute Overwhelm any**
     **Conceivable U.S. Interest.**

  As Defendant noted in its opening Memorandum, dismissal is proper under the

*forum non conveniens doctrine* where, as here, "[t]he marginal nature of the United States' interest

stands in stark contrast to the magnitude of [the alternate forum's] interest." Croesus EMTR

8

<u>Master Fund L.P. v. Federative Republic of Brazil</u>, 212 F. Supp. 2d 30, 40 (D.D.C. 2002). At the outset of this case — and thus *before* Defendant moved to dismiss — Plaintiffs argued strenuously that this case should be maintained under seal because, among other things, "[t]here is no compelling matter of interest to the U.S. public implicated by the documents [allegedly obtained from Plaintiffs by Defendant] in this case." Mem. of P & A in Support of Mot. for Reconsideration, at 5. Plaintiffs have now done an about-face, claiming that "the United States and the District of Columbia have a compelling interest in the subject matter of this action."[4] Opp. at 9.

In any event, there is no dispute that Bermuda has a strong interest in this matter — indeed, Plaintiffs themselves have admitted as much. See Reply Mem. of P & A. in Further Support of Plaintiffs' Motion for Expedited Discovery at 7 ("Bermuda has a strong interest in this matter. . . ."). Plaintiffs have already notified this Court that the Bermudian Minister of Finance "is taking an interest" in this matter and may opine on the case's "role and importance in the statutory scheme." Letter from Roberta Koss to the Honorable Paul L. Friedman (Nov. 17, 2005). Shortly thereafter, the Bermuda Minister of Finance implored this Court to "support[] the Inspectors in their efforts to seek all available remedies" for "a calculated attempt to attack the integrity of Bermuda's statutory processes." See Mot. For Reconsideration, at Exhibit 1, page 1

---

[4] Plaintiffs should be judicially estopped from positing this contradiction. "Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." <u>New Hampshire v. Maine</u>, 532 U.S. 742, 749 (2001) (citation and internal alteration omitted). In addition to being utterly inconsistent with Plaintiffs' own prior statements to this Court, Plaintiffs' flip-flop is wrong. Although Plaintiffs now contend that this case involves "impersonat[ions of] U.S. government officials," Opp. at 9, in fact the centerpiece of Plaintiffs' allegations is alleged representations by an employee of Defendant that he worked for the *British* government. See Compl. at ¶¶ 16(b)-(c); Decl. of _____ at ¶¶ 5-40, 43-52.

**REDACTED**

9

(November 21, 2005 Letter from Donald A. Scott, Bermudian Financial Secretary, to the Honorable Paul L. Friedman). It is far too late in the game for Plaintiffs to repudiate these statements for expediency's sake.

Finally, Plaintiffs unconvincingly argue that this case belongs here because the U.S. has a strong interest "in preventing its territory from being used to launch fraud and other misconduct against victims overseas." Opp. at 9. Again, Plaintiffs misunderstand the *forum non conveniens* doctrine. Notably, Plaintiffs fail to cite any D.C. authority to support their contention. See Opp. at 9. In fact, under Plaintiffs' reasoning, an exception to the *forum non conveniens* doctrine where a plaintiff sues a defendant for alleged wrongful conduct "launched" from the the U.S. "overseas" would swallow the rule: if the defendant were headquartered in the U.S. forum, dismissal could never be ordered. Plainly, such a result is contrary to Piper Aircraft and its progeny.

In sum, the undisputed strong interest of the Bermudian Government in the outcome of this dispute easily overwhelms any conceivable interest of the District of Columbia in this litigation. This public interest factor tips sharply in favor of dismissal.

2.    **Plaintiffs' Own Filings Demonstrate that Issues of Bermuda Law Are Featured Prominently in this Case.**

Next, Plaintiffs incorrectly suggest that Defendant has acquiesced to the application of U.S. law to Plaintiffs' claims. See Opp. at 10. This assertion is simply wrong. In the opening Memorandum, Defendant argued just the opposite: "this case will depend in large part, if not entirely, on the interpretation and application of Bermuda law." Mem. at 10.

It cannot seriously be disputed that if this Court retains jurisdiction, it may well determine that Bermuda law applies. As Plaintiffs themselves note, the claims in this case arise out of events that allegedly "took place when Defendant's employees were on short trips to

10

Bermuda." Opp. at 5. Moreover, Plaintiffs themselves acknowledge that "Bermuda has a strong interest in this matter." Pls. Reply Mem. of P & A. in Further Support of Plaintiffs' Motion for Expedited Discovery at 7. And, as noted earlier, the Government of Bermuda has taken the extraordinary step of writing to this Court to highlight the centrality of Bermuda law in this action, characterizing this case as arising out of "a calculated attempt to attack the integrity of Bermuda's statutory processes." See Mot. For Reconsideration, at Exhibit 1, page 1 (November 21, 2005 Letter from Donald A. Scott, Bermudian Financial Secretary, to the Honorable Paul L. Friedman). In light of the undisputed fact that the alleged acts giving rise to this action took place in Bermuda — and the admitted strong interest of the Bermuda government in this matter -- basic choice-of-law principles would strongly support application of Bermuda law to Plaintiffs' claims. See, e.g., Jaffe v. Pallotta TeamsWorks, 374 F.3d 1223, 1227 (D.C. Cir. 2004) (in tort cases, District of Columbia follows "substantial interest" test, where court will "balance the competing interests of the two jurisdictions, and apply the law of the jurisdiction with the more 'substantial interest' in the resolution of the issue").

The important point, however, is that the Court need not make a choice of law determination on a *forum non conveniens* motion. To the contrary, as Piper Aircraft makes clear, the *forum non conveniens* doctrine "is designed in part to help courts avoid conducting complex exercises in comparative law." 454 U.S. at 251; see also Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 509 (1947) (noting inappropriateness of court being obliged to "untangle problems in conflict of laws, and in law foreign to itself").[5] In fact, the Court already is being asked to undertake such an

---

[5] As the Piper Aircraft Court noted, if a district court were required to make choice-of-law determinations prior to ruling on a *forum non conveniens* motion:

> deciding motions to dismiss on the grounds of *forum non
> conveniens* would become extremely difficult. Choice-of-law
> analysis would become extremely important, and the courts would

exercise; notwithstanding Plaintiffs' suggestion that Bermuda law has no place in this dispute, the

parties already disagree on how Bermuda courts would address a significant issue of apparent first

impression there—whether the Bermuda Government possesses a property interest in the

Inspectors' investigative materials.  See infra Part II.A.  Plaintiffs' proffered expert on Bermuda

law, Mr. Duncan, has filed yet another lengthy declaration setting forth his interpretation of British

caselaw on the question of ownership of reports prepared by Government-commissioned

inspectors.  In light of their own filings to date, Plaintiffs cannot seriously deny that significant –

indeed, novel – issues of Bermuda law are implicated in this case, a factor further militating in

favor of allowing a Bermudian court, and not this one, to hear this case.[6]

---

> frequently be required to interpret the law of foreign jurisdictions.
> First, the trial court would have to determine what law would apply
> if the case were tried in the chosen forum, and what law would
> apply if the case were tried in the alternative forum.  It would then
> have to compare the rights remedies, and procedures available under
> the law that would be applied in each forum.  Dismissal would be
> appropriate only if the court concluded that the law applied by the
> alternative forum is as favorable to the Plaintiff as that of the chosen
> forum.  The doctrine of forum non conveniens, however, is designed
> in part to help courts avoid conducting complex exercises in
> comparative law.

Piper Aircraft, 454 U.S. at 250-51.

[6] See, e.g., Base Metal Trading SA v. Russian Aluminum, 253 F. Supp. 2d 681, 712
(S.D.N.Y. 2003) (noting that courts should "avoid[ ] difficult problems in conflict of laws and the
application of foreign law"); Armco Inc. v. North Atlantic Ins. Co. Ltd., 68 F. Supp. 2d 330, 342
(S.D.N.Y. 1999) ("Among the public factors to be considered by a Court in evaluating a forum non
conveniens motion [is the] . . . interest in issues of foreign law being decided by foreign
tribunals").

**D.    The Private Interests Also Favor Dismissal Because this Court Does Not Have Jurisdiction over Essential Non-Party Witnesses.**

Plaintiffs' private-interest argument against dismissal focuses almost entirely on the fact that Defendant is headquartered in the District of Columbia, and the posited corollary that Defendant's documents and witnesses are located here. This is a curious argument given that the very same argument supports dismissal in favor of litigating in Bermuda, where Plaintiffs' documents and witnesses are located. This point supports neither side.

The real issue concerns access to *non-party* witnesses and documents. As part of the discovery process, Defendant has every intention of seeking documents and testimony from the Bermudian Minister of Finance, who has already interjected her views into this case. At the same time, however, the Minister has notified this Court that "the Government of Bermuda is not willing to be involved or joined in any direct way with the proceedings in the US Court." See Mot. For Reconsideration, at Exhibit 1, page 2 (November 21, 2005 Letter from Donald A. Scott, Bermudian Financial Secretary, to the Honorable Paul L. Friedman). Plaintiffs' own allegations make such non-party discovery from the Minister of Finance pivotal to the issue of damages. Specifically, the Complaint alleges damages for "interference" with the investigation being conducted on behalf of the Bermudian Government, see Comp. ¶¶ 19, and the Declaration of Inspector Malcolm Butterfield

REDACTED

Butterfield Decl. at ¶ 19. Plainly, Defendant must be allowed to test this allegation of damage by taking discovery from the Minister of Finance, who has steadfastly refused to participate in this case in any capacity.

In addition to the Bermuda Minister of Finance, Defendant will no doubt require testimony and/or documents from non-parties located in Bermuda, the British Virgin Islands,

13

Switzerland, and Russia – all of which are beyond the reach of the subpoena power of this Court. Importantly, however, many of these non-parties are likely subject to subpoena power of Bermuda courts because of their incorporation in Bermuda. See Duha v. Agrium, Inc., 340 F. Supp. 2d 787, 797 (E.D. Mich. 2004) ("of all the private interest factors, the relative ability of the forums to compel the attendance of significant unwilling witnesses at trial often is considered the most important factor, because the inability to present live testimony may result in an unfair trial and unfairness to the defendants"); see also Gulf Oil, 330 U.S. at 511 ("[T]o fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants.").[7]

Finally, as noted in Defendant's opening Memorandum, the applicability of foreign law also imposes an unnecessary burden not only on the Court, but on the parties as well. Where, as here, a case involves issues of foreign law, one of the private party interests to be considered is the burden on the parties of presenting expert testimony on foreign law. See Croesus EMTR Master Fund, 212 F. Supp. 2d at 38-39 (noting that because case "will center around an analysis of Brazilian legal issues . . . the parties will have to obtain testimony from Brazilian law experts and from members of the Brazilian government, most of whom are likely to live in Brazil"). Indeed, already at this early stage of the case, each party has had to engage Bermudian counsel to opine on issues of Bermuda law.

---

[7] As Defendant noted in its opening Memorandum – and this is not contested by Plaintiffs – a defendant is *not* required to make a showing of what its defense will be on a *forum non conveniens* motion. See Mercier v. Sheraton Int'l, Inc., 981 F.2d 1345, 1356 (1st Cir. 1992) (rejecting rule that defendant affirmatively demonstrate, by affidavit, the unavailability of a foreign witness and the significance of the witness's testimony, because to do so "would tend to inflict an impossible burden on defendants who are seeking dismissal for the very reason that they cannot compel evidence, including the evidence necessary to argue for dismissal") (citations omitted).

14

**E.     Differences in Bermuda Procedures and/or Remedies Are Irrelevant to the Forum *Non Conveniens* Inquiry.**

Plaintiffs also contend that dismissal for *forum non conveniens* is improper because it will be more difficult for them to obtain injunctive relief in Bermuda than from this Court. The argument has no merit under well established District of Columbia caselaw.

Relying on the (Second) Declaration of Delroy A. Duncan, Plaintiffs acknowledge that "the procedural rules in Bermuda allow for injunctions." Opp. at 7.   Indeed, on this point, the parties' Bermudian-law experts are in complete accord. See Decl. of David R. Kessaram at ¶ 7.

The undisputed fact that injunctive relief is available in Bermuda ends the inquiry. It is of no moment under the *forum non conveniens* doctrine that the standard for, or process of obtaining, an injunction in Bermuda may differ from that in the United States. As the D.C. Circuit has made plain, "[a] foreign forum is not inadequate merely because it has less favorable substantive law, because it employs different adjudicative procedures, or because of general allegations of corruption in the judicial system." El-Fadl, 75 F.3d at 678 (internal citations omitted); see also Piper Aircraft, 454 U.S. at 254-55 (less favorable remedies in a foreign jurisdiction do not preclude dismissal based on *forum non conveniens* so long as remedies are not "clearly inadequate or unsatisfactory"); Mutambara v. Lufthansa German Airlines, 2003 WL 1846083, *2 (D.D.C. March 24, 2003) ("In assessing the adequacy of the alternate forum, the court should not give substantial weight to the possibility of a change in substantive law"); BPA Int'l, 281 F. Supp. 2d at 84-85 (noting Piper Aircraft holding that "less favorable remedies in a foreign jurisdiction do not preclude dismissal based on *forum non conveniens* . . . .").[8]

_____

[8] Nor do differences in discovery procedures available in a foreign forum have any bearing on a *forum non conveniens* determination. See Mercier, 981 F.2d at 1352-53 (collecting cases and finding that "an alternative forum ordinarily is not considered 'inadequate' merely because its courts afford different or less generous discovery procedures than are available under American

Ultimately, Plaintiffs fail to make a credible showing that this case belongs in the United States. This Bermuda-centered action places an impermissible burden on Defendant to litigate here, and the public interest in having this dispute adjudicated in Bermuda overwhelms any asserted public interest of the United States in hearing this case.

## II. THE COMPLAINT MUST BE DISMISSED BECAUSE THE GOVERNMENT OF BERMUDA IS AN INDISPENSABLE PARTY THAT CANNOT BE ORDERED TO JOIN.

Plaintiffs' Opposition to Defendant's Motion to Dismiss under Rules 19 and 12(b)(7) rests on two basic arguments for their contention that the Government of Bermuda is neither a "necessary" party under Rule 19(a), nor an "indispensable" one under Rule 19(b). In essence, Plaintiffs' two arguments are as follows: *first*, the Government has no legal interest in this case because it concerns the disposition of work papers and transcripts exclusively belonging to Plaintiffs, who are independent professionals; and *second*, there is only a "speculative" possibility of subsequent litigation by the Government of Bermuda if it is not joined.[9] Neither argument provides a persuasive reason for the Court to permit this action to proceed in the absence of the Government of Bermuda as a party.

---

rules").

[9] Plaintiffs initially make these two arguments as a Rule 19(a) "necessary party" analysis and then merely recast them as a Rule 19(b) "indispensable party" argument. Their only other Rule 19 argument of note is a multi-page demand, while conceding that the absence of a sovereign is "compelling" under Rule 19(b) analysis, that this Court conduct the Rule 19(b) analysis anyway. See Opp. at 17-19. Plaintiffs' insistence on this point is puzzling, as Defendants has argued, even if the Court does so, the Rule 19(b) factors favor Defendant. See Mem. at 21-25. In any event, however, the compelling factor of an absent sovereign, standing alone, decisively tips that inquiry in Defendant's favor here.

**A.    The Government of Bermuda Has a Legal Interest in This Case.**

On the question of the Government's legal interest in this matter, Plaintiffs' Opposition is most remarkable for what Plaintiffs choose *not* to address. Defendant's opening brief pointed out that in <u>Hearts of Oak Assurance Co., Ltd. v. Attorney-General</u>, [1932] App. Cas. 392, the chief authority cited in the first Duncan Declaration, *the inspectors were not even parties to the case.* Mem. at 17. Rather, the legal action to preserve the confidentiality of the inspectors' work in that case was taken, as Lord Macmillan noted, by "the Attorney General, who appears in the public interest." <u>Hearts of Oak</u> at 400. Faced with this inconvenient fact, neither Plaintiffs' Opposition nor the second Duncan Declaration even mentions the case, despite its prominence in Plaintiffs' earlier filings. Similarly, Defendant noted that in another orphaned case from the first Duncan Declaration, the British Secretary of State[10] "applied to be joined as a party," and was permitted to do so – presumably because the government had a legally-protected interest in the litigation. <u>In re an Inquiry into Mirror Group Newspapers plc</u>, [2000] Ch. 194, 209. Once again, neither the second Duncan Declaration nor Plaintiffs' Opposition mentions the case.

Plaintiffs' silence is damning; they simply cannot argue around the fact that in the reported Companies Act cases it is *the government* that litigates to protect the confidentiality of inspectors' investigations – precisely what Plaintiffs seek in their claims for injunctive relief here. This is powerful evidence indeed that the Government of Bermuda has a legally-protected interest in this action.

---

[10] As Defendant noted in its opening brief, under the United Kingdom Companies Act 1985 (as amended by Companies Act 1989), the Secretary of State is responsible for the appointment of Inspectors – a function analogous to the appointing power of the Minister of Finance in this case under the Bermuda Companies Act. <u>See</u> Mem. at 18 n.6.

This governmental interest – manifested by the presence of government counsel in the reported cases – makes perfect sense, of course, in light of the the Inspectors' role in the U.K. and Bermuda Companies Act statutory schemes. As Mr. Duncan points out in his second Declaration, Section 132 investigations are the sole method by which the Minister of Finance can investigate allegations of impropriety in exempted companies: "the Minister of Finance has no power to conduct the investigation herself." (Second) Duncan Decl. at ¶ 3.5. It strains credulity to suggest (as Plaintiffs do) that the Minister has no separately-assertable claim against Defendant for alleged interference with the Inspectors' investigation, when that investigation is an essential "statutory fact-finding capacity," In re Travel & Holiday Clubs, [1967] 1 W.L.R. 711, 714, which cannot lawfully be performed by the Minister of Finance through any other instrumentality. Although Plaintiffs repeat the mantra that this is "their" investigation, its place in the statutory scheme belies that fact. It is ultimately the Minister's – a fact that is highlighted by the ubiquity of Government counsel in the cases ignored by Plaintiffs.[11]

Faced with these inconvenient cases, Plaintiffs flee headlong from officialdom, contending (for the first time) that they are no more than hired professionals who, under two cases from 1889 and 1941, hold the property interest in their work papers, just like the private surveyors and appraisers at issue in those cases. See Opp. at 14-15; (Second) Duncan Decl. at ¶¶ 3.1-3.7. The Inspectors cannot, however, escape so easily their unique official role in the Companies Act statutory scheme – a role which, until now, Plaintiffs trumpeted quite loudly.

---

[11] Indeed, it presumably would have been a simple matter for Mr. Duncan to say that the Government of Bermuda has no legal interest whatsoever in this action, if that were indeed the case. Mr. Duncan's Declaration, however, does not say that – indeed, it falls well short, arguing only that the Inspectors possess the property interest in their transcripts and interim work papers. See generally (Second) Duncan Decl. at ¶¶ 3.1-4.7.

18

*First,* the text of Section 132 of the Bermuda Companies Act 1981 makes it clear that Inspectors are not simple fee-for-service professionals, but are commissioned by the Government to conduct an investigation under color of law. Among other things, the Act provides:

- Legal authority for the Inspectors to require any officer, agent or employee of the company under investigation to provide documents;

- A fine for any officer, employee, or agent of the company who refuses to provide the inspectors with requested documents or to answer any question relating to the affairs of the company;

- Legal authority for the inspectors to administer oaths or affirmations, and to take evidence under oath in investigating the affairs of the company;

- Any proceedings in connection with the holding of an investigation by the inspector under § 132 "shall, for the purposes of those provisions of the Criminal Code *[title 8 item 31]* relating to perjury, be deemed to be judicial proceedings."

Id. at §§ 110, 132. These are not the badges of an arm's-length purchase of a professional appraisal or survey; they are the marks of an official investigation, conducted by Inspectors under official commission from the Government. Plaintiffs cannot credibly claim that there is no governmental interest in the investigation's documents and records.

*Second,* Plaintiffs ignore the fact that, consistent with the official nature of proceedings under the Companies Act, a long line of United Kingdom authority imposes a "duty to act fairly" (a rough analogue of the United States requirement of governmental due process) on the grounds that Inspectors' investigations are administrative proceedings. See, e.g., Fayed v. United Kingdom, 18 Eur. Ct. H. R. 393, 408-09 (1994) (European Court of Human Rights opinion noting, in its section on "domestic law," that "proceedings before the [Companies Act] Inspectors are administrative in form," imposing a duty to act fairly); In re Pergamon Press Ltd., [1971] Ch. 388, 399 (imposing duty of fairness on inspectors "even though they are not judicial, nor quasi-judicial, but only administrative") (opinion of Lord Denning); Regina v. Race Relations Board, ex parte Selvarajan, [1975] 1 W.L.R. 1686, 1694-9 (noting that Companies Act inspectors, like

19

Commissioners of Inland Revenue and Gaming Board members, have duty to act fairly as an "investigating body"). This body of case law strengthens the point – the Inspectors' investigation is not merely fee-for-service professional work like the property surveys and assessments at issue in Plaintiffs' cited cases – it is an official, administrative proceeding in whose documents the Government of Bermuda plainly possesses a legal interest. Indeed, as Defendant has previously noted, the Government quite probably possesses the *sole* property interest in those papers.

Third, while Plaintiffs take issue with Defendant's citation of Soden v. Burns, 1 W.L.R. 1512 (1996), arguing that the decision's language assigning work paper ownership to the government was dicta, and driven by the inspectors' parallel role as government employees, Plaintiffs do not offer any reason why the ownership of documents produced by commissioned private-sector inspectors should differ from that of commissioned inspectors who happen also to be government employees. Opp. at 14-15.

Fourth, to the extent that Plaintiffs concede (as they apparently do) that Soden is the only case even speaking to the issue of who owns the property interest in the work papers of Companies Act inspectors, Plaintiffs have conceded that this issue is, at best, unsettled under Bermuda law. The issue is plainly an important one, and one that should be litigated in the first instance in a Bermuda forum where the Bermuda courts may rule authoritatively on whether Plaintiffs even have standing to bring their property-interest-based claims. See Section I.C., *supra.*

Finally, Defendant notes that Plaintiffs have represented to the Court that "there is no contractual document governing the relationship between the Minister and the Inspectors." (Second) Duncan Decl. at 6 n.5. Although this defies belief – what large accounting firm works

20

for a year without an engagement letter? – if one assumes that Plaintiffs' statement is accurate,[12] it significantly undercuts their argument that they are merely hired professionals, like land surveyors and appraisers, whose relationships with their clients exist solely by virtue of contract, and who thus may be entitled to the property interest in their work papers.[13] The Inspectors have no authority but their official commissions because an official commissioner is what Plaintiffs are. It is the Government of Bermuda – not Plaintiffs – which possesses the legal interest in their work.

**B.     Defendant Is Plainly at Risk of Subsequent Litigation by the Government of Bermuda.**

Plaintiffs contend, second, that the Government of Bermuda is not an indispensable party because "fear of further litigation is purely speculative, in view of the Minister's lack of interest in the subject matter of these proceedings." Opp. at 16. This is, of course, yet another *volte-face* by Plaintiffs, who represented to this Court less than six weeks ago that the Bermudian Minister of Finance "is taking an interest" in this matter. Letter from Roberta Koss to the Honorable Paul L. Friedman (Nov. 17, 2005). Indeed, it is difficult to take Plaintiffs' present position seriously when the Bermudian Financial Secretary himself has accused Defendant of "a calculated attempt to attack the integrity of Bermuda's statutory processes." See Mot. For Reconsideration, at Exhibit 1, page 1 (November 21, 2005 Letter from Donald A. Scott to the Honorable Paul L. Friedman). Nevertheless, Plaintiffs gamely argue on, contending that "[t]he

---

[12] Mr. Duncan's statement, which was submitted by Plaintiffs to the Court in opposition to Defendant's Motion to Dismiss, appears to be at odds with the earlier Declaration of Malcolm Lllwelyn Butterfield, which states that the Inspectors conducted their investigation "under terms of reference agreed with the Registrar of Companies ('the Investigation')." Id. at ¶ 3.

[13] This was the case in Leicestershire County Council v. Michael Faraday & Partners, Ltd., [1941] 2 K.B. 205, for example, a case cited in the second Duncan Declaration. In that decision, the relationship between appraiser and local government was purely contractual, and the local government was denied access to additional deliverables from the appraiser because "there is nothing in the contract on which the plaintiffs [could] rely." Id. at 215 (opinion of Mackinnon, L.J.).

21

Minister has exhibited no intention to sue" and "has expressed her reluctance to be involved in litigation." Opp. at 16.

The Government's actual statements, however, do not bear the weight Plaintiffs seek to put on them. The Minister has not expressed "a reluctance to be involved in litigation," but, rather, to be involved in *this* litigation, in *this* Court, by stating with great precision that "the Government of Bermuda is not willing to be involved or joined in any direct way with the proceedings in the US Court." Mot. for Reconsideration at Exhibit 1, page 2. This carefully-crafted, selective opt-out only highlights Defendant's point: basic fairness dictates that the Government of Bermuda cannot distance itself from these proceedings to reserve a second "bite at the apple" in the event that KPMG-FAS fails to prevail in this case. The Government should be joined as a party, and if it cannot be, Plaintiffs' complaint should be dismissed.

Finally, Defendant notes that although Plaintiffs spend considerable effort to argue that dismissal for nonjoinder of a necessary party is only appropriate where "subsequent litigation by the absentee [is] inevitable," Opp. at 20 n.8, the cases simply do not support this cramped view of the law. See, e.g., Davis v. United States, 343 F.3d 1282, 1292 (10th Cir. 2003) (upholding dismissal where absentee "would not be bound by the judgment in this case and could initiate litigation"); Owens-Illinois, Inc. v. Meade, 186 F.3d 435, 441 (4th Cir. 1999) (noting "high likelihood of incongruous results"; "the increased potential for inconsistent judgments"); Schlumberger Industries v. National Surety Corp., 36 F.3d 1274, 1286-87 (4th Cir. 1994) (holding parties were indispensable where potential existed for different interpretations of law or different findings of fact); Sierra Club v. Leathers, 754 F.2d 952 (11th Cir. 1985) (transferring action where there was "the possibility of inconsistent adjudications"). Defendant respectfully submits that the Government's previous statements to this Court, coupled with its assiduous efforts to ensure that it

22

is never bound by the results of these proceedings, provide Defendant with a well-founded fear of subsequent litigation by the Government of Bermuda even if Defendant should prevail against KPMG FAS here.

## CONCLUSION

For the reasons set forth above and in Defendant's opening Memorandum, Defendant respectfully requests that the Complaint be dismissed in its entirety.

Respectfully submitted,

December 23, 2005                    AEGIS LAW GROUP LLP

By: *Paul Rauser*

Paul C. Rauser (D.C. Bar No. 461722)
Oliver Garcia (D.C. Bar No. 456600)
901 F Street, N.W., Suite 500
Washington, D.C. 20004
T: 202-737-3500
F: 202-737-3330

*Attorneys for Defendant Diligence Inc.*

23

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on December 23, 2005 by hand upon:

> Roberta Koss, Esq.
> Hughes Hubbard & Reed LLP
> 1775 Eye Street, N.W.
> Washington, DC 20006-2401

Paul C. Rauser