IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KPMG FINANCIAL ADVISORY SERVICES LIMITED, MALCOLM BUTTERFIELD, and MICHAEL MORRISON,<br><br>*Plaintiffs,*<br><br>v.<br><br>DILIGENCE LLC<br><br>*Defendant.* | Civil Action No. 05-2204 (PLF) |

**MEMORANDUM OF DEFENDANT IN OPPOSITION
TO IPOC INTERNATIONAL GROWTH FUND LIMITED'S
MOTION TO INTERVENE, FOR ACCESS TO COURT FILES,
TO MODIFY PROTECTIVE ORDERS AND
TO ALTER CONFIDENTIALITY DESIGNATIONS**

IPOC International Growth Fund, Ltd.'s ("IPOC's") motion to intervene in this settled and dismissed case to obtain access to documents is nothing more than an effort to circumvent this Court's July 31, 2006 Order in IPOC International Growth Fund Ltd. v. Diligence LLC and Barbour, Griffith & Rogers LLC, No. 1:06-CV-1109, a related case currently pending before the Court. That July 31, 2006 Order provides, in pertinent part:

> this Court *sua sponte* orders that all discovery is STAYED pending the Court's decision on defendants' motions to stay discovery pending resolution of defendants' motions to dismiss. The parties will not conduct any discovery, including third-party discovery, until such time as the Court has decided these motions to stay discovery.

Minute Order, July 31, 2006.

The Court entered its *sua sponte* Order as IPOC raced to learn what it could, while it could, from KPMG Financial Advisory Services, Ltd. ("KPMG FAS") – a third-party witness in the IPOC v. Diligence litigation – before the pending motions to dismiss and accompanying motions to stay discovery in that case could be fully briefed by the parties and decided by this Court. Thwarted by the Court's July 31 Order, IPOC now simply disregards the Court's ruling, endeavoring to engineer through intervention in this case what it could not quite manage in that one; namely, immediate "access to all discovery material," IPOC Proposed Order at 2, and unredacted copies of the redacted filings docketed in this case.

Diligence respectfully suggests that the Court should recognize – and reject – IPOC's motion to intervene for what it is: an attempted end-run around the Court's July 31 Order in IPOC v. Diligence. First, although IPOC protests that it has an entitlement to the confidential and under-seal materials in this action, IPOC offers no reason whatsoever why that issue cannot be litigated in an orderly manner before the Magistrate Judge appointed to oversee discovery in IPOC v. Diligence when – and if – IPOC is ever permitted to take discovery in that action. This alone defeats IPOC's argument for intervention "as of right" under Federal Rule of Civil Procedure 24(a), and provides persuasive grounds to deny "permissive" intervention under Rule 24(b).

Second, it is crucial to note that IPOC identifies only one, and only one, legal interest to support either intervention "as of right" or "permissive" intervention in this case: "IPOC seeks access, for use in IPOC v. Diligence et al., to the official court files and discovery in this case." Mem. at 1; see also Mem. at 10, 12. Yet it is not at all clear that there will even be an IPOC v. Diligence case to provide the "legal interest" that IPOC touts in its motion to intervene. There are no fewer than four dispositive motions arrayed against IPOC in that case – including, notably, one challenging the Court's subject-matter jurisdiction even to hear the matter. Any one of these

four motions will, if granted, dispose of the IPOC v. Diligence case entirely and, along with it, the legal predicate for IPOC's attempted intervention. There is simply no reason to decide the issue presented here now, and in this case, when the Court may do so later, after IPOC's entitlement to discovery in IPOC v. Diligence – or lack thereof – has been established.

Finally, although Diligence believes that IPOC's motion to intervene in this case should not be granted – and certainly should not be granted now, with four dispositive motions pending in IPOC v. Diligence – the Court should not in any event grant IPOC the broad relief set out in its motion. There is simply no basis to eviscerate a protective order on which the parties relied during discovery and settlement of the KPMG FAS v. Diligence case, and certainly no basis for a wholesale de-designation of materials previously designated confidential under that order without so much as a passing glance at the documents in question.

Moreover, nothing in IPOC's intervention papers warrants reconsideration of this Court's January 4, 2006 Memorandum Opinion and Order permitting redaction, *inter alia*, of portions of confidential KPMG FAS and Diligence documents that were allegedly improperly disclosed and subsequently quoted during litigation. Indeed, IPOC's argument is rich with irony, for it is precisely such disclosure and dissemination that IPOC complains of in the IPOC v. Diligence action.

## FACTUAL BACKGROUND

IPOC filed its Complaint in IPOC v. Diligence on June 16, 2006. Shortly thereafter, on July 14, 2006, the parties held a conference pursuant to Federal Rule of Civil Procedure 26(f), and, mere hours later, IPOC initiated third-party discovery with service of a non-party subpoena on Hughes, Hubbard & Reed LLP ("Hughes Hubbard"), counsel for plaintiffs in this case. The Hughes Hubbard subpoena purported to require Hughes Hubbard to produce all

unredacted pleadings from the instant KPMG FAS v. Diligence litigation notwithstanding this Court's Order placing such documents under seal, as well as all discovery materials produced by Diligence in this action notwithstanding an existing protective order entered by this Court.

Shortly after the Rule 26(f) conference, each defendant in IPOC v. Diligence filed a motion to dismiss that case in its entirety, along with a motion for a protective order staying all discovery until the Court has ruled on motions to dismiss and, in the case of defendant Barbour, Griffith & Rogers, an upcoming the motion for judgment on the pleadings.

On July 21, 2006, Hughes Hubbard objected in writing to the subpoena for numerous reasons, including, among other grounds, that (i) Diligence's pending motion to stay discovery "moots the Subpoena until such [stay] motion has been addressed"; (ii) certain responsive materials are designated as confidential in this case; and (iii) some of the materials called for by the subpoena are protected by contractual confidentiality obligations. See July 31, 2006 Motion to Expedite Consideration of Motion to Stay Discovery and For Order Prohibiting Disclosure of Sealed Court Materials (IPOC v. Diligence Docket No. 18) ("Mot. To Expedite"), at Exhibit D.

Nevertheless, despite Hughes Hubbard's earlier objections to the subpoena, Hughes Hubbard subsequently offered to produce to IPOC "complete copies" of various specific sealed and/or redacted filings in the KPMG FAS matter, as well as to make "any other unredacted pleadings from KPMG v. Diligence available for inspection," and "to provide copies of the discovery [KPMG FAS] obtained in the KPMG v. Diligence action." See Mot. To Expedite, Exhibit F. Following unsuccessful efforts over the ensuing weekend to resolve the issue, and faced with imminent production by Hughes Hubbard to KPMG, Diligence filed its Motion to Expedite

4

on July 31, 2006. Later the same day, this Court entered its *sua sponte* Order, which provided in full:

> MINUTE ORDER that this Court *sua sponte* orders that all discovery is STAYED pending the Court's decision on defendants' motions to stay discovery pending resolution of defendants' motions to dismiss. The parties will not conduct any discovery, including third-party discovery, until such time as the Court has decided these motions to stay discovery. (The Court notes that defendants' opposed motions to stay discovery have not yet been fully briefed, and therefore are not ripe for determination at this time.)

Minute Order, July 31, 2006.

This motion followed.

## ARGUMENT

### I.   IPOC'S MOTION TO INTERVENE SHOULD BE DENIED.

   A.   IPOC's Claims for Access To Sealed and Protective Order Materials Can, and Should Be, Decided By Magistrate Judge Kay in IPOC v. Diligence.

The reasons for IPOC's sudden motion to intervene are as transparent as they are meritless: foiled in its hurried efforts to obtain third-party discovery by this Court's July 31, 2006 discovery stay in IPOC v. Diligence, IPOC now seeks access in this case to the very documents the Court blocked IPOC from demanding in IPOC v. Diligence.[1] There is, however, no reason why this Court should allow IPOC to use this dismissed case to pursue out-of-turn discovery for IPOC v. Diligence. Instead, the Court should, as its July 31, 2006 Order clearly contemplated, leave these issues to be determined in an orderly manner by the Magistrate Judge assigned to resolve such issues in the pending, active IPOC v. Diligence case. See Aug. 7, 2006 Order Referring Case

---

[1] Indeed, Diligence notes that IPOC apparently considered intervening in this case before it was dismissed but elected not to do so, see Mot. To Expedite, Exhibit E, opting instead to file the IPOC v. Diligence action and serve a non-party subpoena on Hughes Hubbard. IPOC's decision to revert to intervention was, of course, nothing more than tactical; having failed to obtain what it wanted when it wanted it in the IPOC v. Diligence case, IPOC seeks to obtain it another way.

5

to Magistrate Judge Alan Kay (IPOC v. Diligence Docket No. 27) (referring case for the management of all discovery and the decision on all discovery-related motions, including the pending motions to stay discovery).

First, despite its efforts to cloud the issue, IPOC does not seriously contend that this Court's July 31, 2006 Order – which merely <u>delayed</u> IPOC's discovery of materials from <u>KPMG FAS v. Diligence</u> pending full briefing and resolution of defendants' pending stay motions – suffices to "impair or impede" IPOC's legally protected interests so as to allow it to intervene "as of right" under Rule 24(a).[2] <u>See</u> Mem. at 10 (reciting four-line *pro forma* claim of interest in this action). Indeed, in this regard, it is noteworthy that IPOC has itself proposed a <u>one year</u> discovery period (ending July 14, 2007), with a dispositive motions deadline of September 14, 2007. <u>See</u> Joint Statement Pursuant to Rule 26(f) and Local Rule 16.3 (<u>IPOC v. Diligence</u> Docket No. 16). Under this schedule, any suggestion by IPOC that it has suffered some legally-cognizable impairment in <u>IPOC v. Diligence</u> for Rule 24(a) purposes is pure fancy.[3]

Moreover, while Diligence recognizes that Rule 24(b) affords the Court broad discretion to allow or deny permissive intervention, <u>see</u> <u>EEOC v. National Children's Center, Inc.</u>,

---

[2] Although it is not necessary to decide the issue in order to deny Rule 24(a) intervention to IPOC, IPOC has utterly failed to show that it possesses the Article III standing necessary to assert a Rule 24(a) motion in this case. As this Court has observed, "an applicant for intervention as of right must demonstrate that it has standing by showing injury-in-fact, causation, and redressability. . . . the applicant must have suffered an injury in fact, defined as a harm that is concrete and actual or imminent, not conjectural or hypothetical." <u>Environmental Defense v. Leavitt</u>, 329 F. Supp. 2d 55, 66 (D.D.C. 2004). This contrasts with Rule 24(b) permissive intervention for the limited purpose of challenging confidentiality orders, for which the Court of Appeals and this Court have relaxed the requirement of an independent basis for jurisdiction. <u>See, e.g.</u>, <u>In re Vitamins Antitrust Litigation</u>, No. 99-Misc-197(TFH), 2001 WL 34088808, at *3 (D.D.C. March 19, 2001).

[3] The closest IPOC comes to explaining why it should be entitled to obtain under-seal and/or confidential materials is its suggestion that such materials will allow it to defeat dismissal under Federal Rule of Civil Procedure 9(b) in <u>IPOC v. Diligence</u>. Diligence is, however, aware of no authority suggesting that a party may file a defective fraud claim and then bootstrap that claim to scavenge for useful facts in other actions while a Rule 9(b) motion to dismiss is pending.

146 F.3d 1042, 1046 (D.C. Cir. 1998), there is little reason for the Court to exercise that discretion in IPOC's favor here, where IPOC will possess ample opportunities to pursue access to documents in IPOC v. Diligence in the event that its claims survive in that case.[4]

At bottom, the gravamen of IPOC's motion is not that it has been denied discovery of any of the materials it seeks here in IPOC v. KPMG; rather, IPOC complains that it wants those materials now. But the deferred availability of discovery in IPOC v. Diligence, ordered by this Court, is simply not a legitimate basis for intervention in this now settled-and-dismissed case. To the contrary, courts deny requests for intervention, such as this one, where the would-be intervenor seeks to evade limitations on discovery placed on it in another action. See, e.g., AT & T Corp. v. Sprint Corp., 407 F.3d 560, 562 (2d Cir. 2005) (denying intervention where plaintiff "attempt[ed] to circumvent the close of discovery" in parallel action); cf. 8 Charles Alan Wright et al., *Federal Practice & Procedure* § 2044.1 (2006) (noting that where a "limitation on discovery in the collateral litigation would be substantially subverted by allowing access to discovery material under a protective order, the court should be inclined to deny modification"). Plainly, IPOC should not be permitted to end-run the Court's stay Order in IPOC v. Diligence by simply shifting the focus of its document-discovery efforts to this case.

---

[4] See, e.g., Cunningham v. Rolfe, 131 F.R.D. 587, 590 (D. Kan. 1990) (denying motion to intervene when "applicants have shown no reason why the discovery process available to them through [a parallel action] cannot adequately address their discovery needs"); SmithKline Beecham Corp. v. Synthion Pharm., 210 F.R.D. 163, 169 (M.D.N.C. 2002) ("a motion to convince the Court to modify a protective order in order to use material in other litigation should, in most cases, be the last resort of a party, not the first"); 7C Charles Alan Wright et al., *Federal Practice & Procedure* § 1913 (2d ed. 1986 and 2005 update) (if would-be intervenor "is already a party to other litigation in which his rights can be fully determined, or if there is another adequate remedy available to him to protect his rights, this may persuade the court to deny leave to intervene"); cf. Deus v. Allstate Ins. Co., 15 F.3d 506, 526 (5th Cir. 1994) (noting that "[i]ntervention generally is not appropriate where the applicant can protect its interests and/or recover on its claim through some other means").

Finally, Diligence notes one additional, prudential reason why this Court should decline to exercise its discretion to permit intervention in this case: as IPOC is perfectly aware, even if IPOC were to succeed in overturning the protective order in this case and de-designating all "confidential" discovery, KPMG FAS would still be contractually bound under the parties' settlement agreement to withhold such materials from IPOC. See Exhibit 1 (copy of Diligence counsel's letter, forwarded to IPOC counsel by KPMG FAS, indicating that the parties' May 16, 2006 settlement agreement precludes disclosure of KPMG FAS discovery to IPOC); Mot. To Expedite Exhibit D (KPMG FAS objects to subpoena on grounds that materials called for by the subpoena are governed by contractual confidentiality obligations).

KPMG FAS counsel has confirmed, as recently as last night, that KPMG FAS believes that it may not turn over discovery materials obtained in this action absent a live, enforceable subpoena – something that presently does not exist in the IPOC v. Diligence case. Thus, while IPOC trumpets the present motion as one that will provide it with immediate "access to all discovery material," IPOC Proposed Order at 2, it in fact will do no such thing. Instead, it will decide some of the issues relating to disclosure of discovery materials, while leaving others for resolution in IPOC v. Diligence. IPOC will, however, only obtain discovery materials when – and if – it is permitted to proceed with discovery in IPOC v. Diligence, pursues its subpoena, and obtains a favorable ruling on KPMG FAS's contractual confidentiality obligations. There is little reason to invoke permissive intervention in this settled case to facilitate such a bizarre two-step, particularly when all of the issues may be decided in an orderly manner by Magistrate Judge Kay in the event that discovery moves forward in the IPOC v. Diligence case. This efficiency provides another, independent basis for declining intervention here.

  B. The Court Should Defer Resolution of IPOC's Motion to Intervene
    <u>Until Resolution of the Dispositive Motions in IPOC v. Diligence</u>

  Moreover, to the extent that this Court is inclined even to consider the merits of IPOC's motion to intervene – and, for the reasons above, it should not – there is simply no reason for the Court to do so now, while any one of four dispositive motions pending in <u>IPOC v. Diligence</u> may entirely dispose of IPOC's claimed legal basis for intervening in this case.

  IPOC's motion is perfectly clear on one point: the <u>only</u> legal interest IPOC asserts to support either intervention "as of right" or "permissive" intervention is the purported interest IPOC has in obtaining materials from <u>KPMG FAS v. Diligence</u> to use in <u>IPOC v. Diligence</u>. See Mem. at 10 (only claimed basis for Rule 24(a) intervention is the "focus and subject matter" common to <u>KPMG v. Diligence</u> and <u>IPOC v. Diligence</u>); Mem. at 12 (only claimed basis for Rule 24(b) intervention is assertion that "the same facts underlie both actions"). But the viability of IPOC's Complaint in the <u>IPOC v. Diligence</u> matter is in serious doubt: it is subject to two motions to dismiss, on different grounds, for failure to state a claim and failure to plead with particularity; a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction; and a Rule 12(c) motion for judgment on the pleadings.[5]

  Under such circumstances, it is hardly clear whether IPOC will even have a live lawsuit in <u>IPOC v. Diligence</u> – the factual underpinning of its motion to intervene – following this Court's rulings on the pending dispositive motions. In light of those motions, Diligence respectfully suggests that even if the Court is inclined to entertain IPOC's efforts to modify the <u>KPMG FAS v. Diligence</u> protective order and to unseal and de-designate confidential materials, the decision on IPOC's motion should be deferred until the Court determines whether any of

---

[5] See <u>IPOC v. Diligence</u>, Docket Nos. 8 & 12 (motions to dismiss for failure to state a claim/Rule 9(b)); Docket No. 33 (motion to dismiss for lack of subject matter jurisdiction); Docket No. 34 (motion for judgment on the pleadings).

IPOC's claims survive and, if so, whether the remaining claims provide it with a viable basis for intervention in this case.

II. **IPOC's MOTION PROVIDES NO BASIS FOR WHOLESALE DE-DESIGNATION OF CONFIDENTIAL DISCOVERY MATERIAL OR RECONSIDERATION OF THE COURT'S JANUARY 4, 2004 SEAL ORDER.**

Even if the Court were to grant IPOC's request to intervene in this case – and, as noted above, the court need not and should not – there is still no basis to grant the relief that IPOC requests in this action.

   A. **IPOC Has Identified No Basis For Wholesale De-Designation of Discovery Documents Previously Designated as Confidential in this Case.**

IPOC's request to modify the existing protective order in this case and to de-designate all materials presently designated as confidential is deeply flawed, in several respects. First, IPOC incorrectly assumes that the public has a right to access pre-trial discovery exchanged between litigants. See Mem. at 17-19. That is simply wwrong. See Seattle Times Co. v. Rhinehart, 467 U.S. 20, 33 (1984) (pretrial discovery mechanisms "are not public components of a civil trial . . . . [rather] they are conducted in private as a matter of modern practice"); Anderson v. Ramsey, No. 04-CV-LA-56(GK/JMF), 2005 WL 475141, at *2 (D.D.C. March 1, 2005) (denying public access to discovery materials and noting that any "supposed presumption in favor of public access to discovery material . . . did not survive the Supreme Court's contrary conclusion in Seattle Times"); New York v. Microsoft Corp., 206 F.R.D. 19, 24 (D.D.C. 2002) (denying request for access to deposition transcripts as "unprecedented and without basis in law"; court was provided "no legitimate reason to authorize such far-reaching access to pretrial discovery materials").[6]

---

[6] See also Chicago Tribune Co. v. Bridgestone/Firestone, Inc., 263 F.3d 1304, 1311 (11th Cir. 2001) (no common-law right of access to discovery material); Banco Popular de Puerto Rico v. Greenblatt, 964 F.2d 1227, 1232-33 (1st Cir. 1992) (rejecting intervention by nonparty contending that it has an entitlement

Second, while IPOC recognizes – as it must – that the Court must give weight to the parties' reliance on the existing protective order, Mem. at 13, IPOC fails to acknowledge that this shifts the burden onto the party seeking disclosure. See, e.g., Securities and Exchange Comm'n v. TheStreet.com, 273 F.3d 222, 229-30 (2d Cir. 2001) (noting that "if previously-entered protective orders have no presumptive entitlement to remain in force, parties would resort less often to the judicial system for fear that such orders would be readily set aside in the future"). IPOC also fails to acknowledge the exacting nature of the burden placed on a movant seeking modification of a protective order. See, e.g., Geller v. Branic International Realty Corp., 212 F.3d 734, 738 (2d Cir. 2000) (requiring "a showing of improvidence in the grant of a Rule 26(c) protective order or some extraordinary circumstance or compelling need" to modify the existing order). As one court has held:

> Once the Court has entered an order sealing a document and the parties have relied on the confidentiality order, it can only be modified if an 'extraordinary circumstance' or 'compelling need' warrants the requested modification. For the Court to change its position risks both working an injustice on the parties to the action and discouraging future litigants from entering settlements predicated on confidentiality.

Boone v. City of Suffolk, 79 F. Supp. 2d 603, 606 (E.D. Va. 1999) (citations and quotation marks omitted). Indeed, even those courts that do not require such a heightened showing nevertheless recognize the strong interest of the parties in previously-entered protective orders. See, e.g., Pansy

---

to discovery information gathered and held by others; "the law simply does not grant a right of access to a nonparty in such circumstances"); Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs., 800 F.2d 339, 343 (3rd Cir. 1986) (stating that there is no right of access to pretrial discovery, unless it is filed with the court); In re Baycol Prod. Litig., MDL No. 1431, 2003 WL 23145587, at *1 (D. Minn. Dec. 12, 2003) ("while there is a right of public access to judicial proceedings, this right does not necessarily extend to pretrial discovery that has not become a public component of a civil case."); Doe v. Blue Cross Blue Shield of Maryland, 103 F. Supp. 2d 856, 857 (D. Md. 2000) (common law right of public access does not attach to "raw fruits of discovery"); United States v. Amodeo, 71 F.3d 1044, 1050 (2d Cir. 1995) ("Documents that play no role in the performance of Article III functions, such as those passed between the parties in discovery, lie entirely beyond the presumption's reach"); Kamakana v. City and County of Honolulu, 447 F.3d 1172, 1179-80 (9th Cir. 2006) (discovery documents attached to non-dispositive motions are exempt from presumption of public access).

v. Borough of Stroudsburg, 23 F.3d 772, 790 (3d Cir. 1994) (acknowledging that a court "should consider in determining whether to modify the order . . . the reliance by the original parties on the confidentiality order"). IPOC falls woefully short of rebutting that interest here. Instead, IPOC offers only a cursory argument, and one that is wrong on its face.

IPOC argues that the parties did not demonstrate, and the Court did not find "good cause" for entry of the order in the first place. See Mem. at 18-19. That is obviously and self-evidently wrong: indeed, the Court noted as much when it endorsed the protective order now in place. That order explains:

> The Court finds that disclosure and discovery activities in these proceedings are likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting or defending this litigation would be warranted, and that the parties have therefore shown good cause for the entry of a protective order pursuant to Federal Rule of Civil Procedure 26(c).

Protective Order Governing Confidentiality and Inadvertent Disclosure of Documents, at 1. Under its plain terms, this sufficed to meet the "good cause" showing for entry of a protective order: Rule 26(c)(7) provides that a protective order is appropriately entered to ensure that "a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way." Fed. R. Civ. P. 26(c)(7) (emphasis added); see also AMFAC Resorts v. U.S. Department of the Interior, 143 F. Supp. 2D 7, 14 (D.D.C. 2001) (noting same).

Finally, Diligence notes that, regardless of the disposition of IPOC's request to intervene and to modify the protective order in this case, IPOC's motion does not in any event warrant the broad relief it seeks in its motion; namely, wholesale de-designation of materials previously designated as "confidential." Indeed, the protective order entered by the Magistrate Judge in this case provides specific procedures that any party may employ if it believes that a party has improperly designated a document under the protective order. See Protective Order ¶ 16.

IPOC offers no basis for ignoring those procedures here, nor does it offer any plausible reason for a blanket de-designation of materials previously designated by the parties under the protective order.

     **B.**    **IPOC Has Identified No Basis To Overturn This Court's Order of January 4, 2006.**

In addition to failing to identify any legitimate grounds for de-designating as "Confidential" Diligence's document production in this now-settled case – so that IPOC may disseminate the documents whenever it wants to whomever it wants – IPOC likewise fails to identify any valid basis to set aside this Court's order of January 4, 2006. In that Order, the Court granted in large part the relief requested by both Diligence and plaintiffs in this case, expressly directing the parties to seek joint agreement on the documents to be maintained under seal, and permitting the parties thereafter to file additional sealed materials with the Court with the designation "FILED UNDER SEAL." January 4, 2006 Memorandum Opinion and Order (the "January 4 Order").

IPOC now urges reconsideration of the January 4 Order. Not only does IPOC's reconsideration request carry with it a heavy burden,[7] but it is rich with irony. Whereas IPOC has sued Diligence for alleged dissemination of its own confidential information, IPOC now seeks unfettered access to, and the ability to freely disseminate, <u>Diligence's</u> internal, confidential information. As the Complaint in this case alleged, the materials filed by Plaintiffs at the outset of this case – the very materials both Plaintiffs and Diligence sought to maintain under seal – included "copies of internal [Diligence] emails and other business records of [Diligence], along with internal working papers <u>and other confidential documents</u>," allegedly delivered anonymously

---

[7] Motions for reconsideration are, of course, "disfavored." <u>Lightfoot v. District of Columbia</u>, 355 F. Supp. 2d 414, 421 (D.D.C. 2005) (treating defendants' motion for reconsideration as a Rule 59(e) motion); <u>see</u> also <u>Zyko v. Department of Defense,</u> 180 F. Supp. 2d 89, 91 (D.D.C. 2001) ("the reconsideration and amendment of a previous order is an extraordinary measure.") (*citing* <u>Firestone v. Firestone,</u> 76 F.3d 1205, 1208 (D.C. Cir. 1996)).

to KPMG without authorization by Diligence.[8]  See Compl. at ¶ 15 (emphasis added).  Contrary to IPOC's suggestion, therefore, it is not only Diligence that has asserted that the pleadings placed under seal include confidential, internal Diligence materials; the Plaintiffs' Complaint specifically alleges so.  Again, tellingly, the only (would-be) party contesting this point is the only party that has not seen the documents at issue.

In urging this Court to vacate its January 4 Order and immediately unseal the redacted filings, IPOC implies (but is careful enough not to state expressly) that this Court erred in entering the January 4 Order.  According to IPOC, "[g]ood cause sufficient to overcome the presumption of public access to court files has not been shown . . ." Mem. at 15.  Not only does IPOC fail to buttress its assignment of error with supporting facts or contrary caselaw, but IPOC's argument at best ignores – and at worst dismisses – this Court's careful analysis set out in its January 4 Memorandum Opinion.  To be sure, the Court no doubt determined that good cause existed for its January 4 Order.  In that Order, the Court specifically noted that, given the right of public access to court records, "[c]learly, as much of the record in this case as possible must be opened as promptly as possible . . ." Order at 3.  The Court went on to hold, however, that in order to protect the "potentially confidential nature" of the Diligence internal documents quoted in, and attached to, pleadings in the case, the parties should meet-and-confer to agree upon redacted versions of previously-sealed pleadings to be made available to the public; the parties timely did

---

[8] Diligence would be exposed to considerable prejudice in the event of disclosure of its alleged confidential, internal work papers allegedly delivered anonymously to KPMG without authorization by Defendant.  As this Court has noted, the power to seal is especially important where a court considers information or documents obtained, as here, "through means other than discovery." Public Citizen Health Research Group v. Food and Drug Administration, 953 F. Supp. 400, 405 (D.D.C. 1996). In Public Citizen, this Court imposed a seal on confidential documents which were erroneously disclosed, noting the privacy concerns such disclosure raised. See 953 F. Supp. at 402. Here, the public policy concerns are even greater; if Plaintiffs' account is true, the documents were not erroneously disclosed, but rather are the fruits of an anonymous, unauthorized disclosure (if not outright theft).

14

so. January 4 Order at 4. The Court specifically ordered that the parties, going forward, could file additional materials with the Court with the designation "FILED UNDER SEAL," so long as a redacted version was made available to the public. Id. at 4. While IPOC suggests that there was no "good cause" to support the Court's January 4 Order, it never states any reason why this Court was wrong, nor does it provide any reason to disturb the careful reasoning set forth that Order – particularly not when the parties to this action relied on that Order throughout the litigation. Thus, even if the Court should reach the issue (and, for the reasons set out above, it need not), IPOC's motion must be denied.

## CONCLUSION

For the foregoing reasons, Diligence respectfully requests that the Court deny IPOC's motion in its entirety. In the alternative, Diligence respectfully requests that the Court defer ruling on IPOC's motion to intervene pending the resolution of the pending dispositive motions in <u>IPOC International Growth Fund Ltd. v. Diligence LLC and Barbour, Griffith & Rogers LLC</u>, No. 1:06-CV-1109.

August 22, 2006

Respectfully submitted,

AEGIS LAW GROUP LLP

By: _____/s/ Paul C. Rauser_____
Paul C. Rauser (D.C. Bar No. 461722)
Michael K. Ross (D.C. Bar No. 458573)
Oliver Garcia (D.C. Bar No. 456600)
901 F Street, N.W., Suite 500
Washington, D.C. 20004
T: 202-737-3500
F: 202-737-3330

*Attorneys for Defendant Diligence Inc.*

Exhibit 1

Case 1:05-cv-02204-PLF   Document 65   Filed 08/22/2006   Page 16 of 20

# ægis law group LLP

Paul C. Rauser
202 737 3375
prauser@aegislawgroup.com

July 28, 2006

**VIA PDF and Facsimile**
Derek J. T. Adler, Esq.
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY 10004

Re:   IPOC International Growth Fund v. Diligence LLC,
      No. 06-01109 (PLF)

Dear Derek:

      We have received copies of your July 21, 2006 letter to Carol A. Joffe and a subsequent e-mail, dated July 27, 2006, to Kimball Anderson, both counsel for IPOC International Growth Fund, Ltd. ("IPOC"). I have also received, by first-class mail this afternoon, a copy of a July 24, 2006 letter from Ms. Joffe in response to your July 21st letter. All three communications concern a subpoena directed to Hughes, Hubbard & Reed LLP (the "Subpoena") in the above-referenced matter – a subpoena which, according to Ms. Joffe's July 24th, you yourself suggested to IPOC's counsel. Your July 21st letter presents Hughes, Hubbard's objections to the Subpoena and indicates that the firm will not be making a production on the date specified; your July 27th e-mail, on the other hand, offers to produce certain documents requested in the Subpoena subject to conditions set out in that e-mail. I write to convey to you Diligence's position on the production which Hughes, Hubbard has offered to make to IPOC.

      First, it appears from your July 27th e-mail that Hughes, Hubbard has offered to produce to IPOC "complete copies" of various specific sealed and/or redacted filings in the <u>KPMG FAS v. Diligence</u> matter, as well as to make "any other unredacted pleadings from KPMG v. Diligence available for inspection." You apparently intend to make production of those materials "early next week."

      I wish to remind you in unequivocal terms that such a production of under-seal material would directly violate orders of the Court in the <u>KPMG FAS v. Diligence</u> litigation in which Hughes, Hubbard was counsel of record. As you are aware, *both* KPMG FAS and Diligence moved in that action to maintain the case under seal. On January 4, 2006, the Court granted in large part the relief requested in *both* motions, and expressly ordered that the parties seek joint agreement on the documents to be maintained under seal "in view of the *defendant's*

901 F Street, N.W.
Suite 500
Washington, DC 20004
T 202 737 3500
F 202 737 3330
www.aegislawgroup.com

**ægis law group LLP**

Derek J. T. Adler, Esq.
July 28, 2006
Page 2 of 4

*pending motion* to maintain the case under seal and *its* expressed interest in the potentially confidential nature of some of the documents currently filed under seal." January 4, 2006 Memorandum Opinion and Order (the "Seal Order") (emphasis added). In addition, the parties were permitted to file additional sealed materials with the Court with the designation "FILED UNDER SEAL." The parties subsequently agreed on a joint stipulation of material to be sealed, and on January 25th, Judge Friedman ordered filing of all of the parties' jointly-proposed redacted documents, with the unredacted copies remaining under seal.

In light of the Court's Seal Order, Hughes, Hubbard may not lawfully produce the materials set out in numbered paragraph 1. of your July 27th e-mail, nor may it unilaterally decide that it possesses (and thus can waive) the legal interest in the continued seal of these documents absent further order of the Court. There is an existing Court order barring such release – an order expressly predicated on "defendant's [i.e. Diligence's] pending motion to maintain the case under seal." Hughes, Hubbard is bound to respect that order until it is lifted or modified by the Court.

Second, your July 27th e-mail indicates that Hughes, Hubbard is "prepared to provide copies of the discovery [KPMG FAS] obtained in the KPMG v. Diligence action." Independent of the protective order in that action which, your July 21st letter correctly notes, governs the dissemination of these materials, the disposition of these materials is expressly governed by the May 17, 2006 Confidential Settlement Agreement (the "Settlement Agreement") between KPMG FAS and Diligence.

# REDACTED

These contractual obligations – which, I remind you, are themselves confidential – preclude the disclosures to IPOC contemplated in your July 27th e-mail.

## ægis law group LLP

Derek J. T. Adler, Esq.
July 28, 2006
Page 3 of 4

       Fourth, as you point out in your July 21st letter, the Protective Order Governing Confidentiality in the <u>KPMG FAS v. Diligence</u> case governs the Diligence-produced materials specified in paragraph 3. of your July 27th e-mail. Paragraph 21 of that Protective Order requires "best efforts to give the Producing Party a reasonable opportunity to seek to quash or otherwise seek relief from the subpoena or other legal process" before disclosure. Diligence expects that you will make those "best efforts" with respect to the Subpoena.

       Fifth, Diligence has moved to stay all discovery in the <u>IPOC v. Diligence</u> matter pending resolution of its Motion to Dismiss in this case; a copy of that stay motion is attached to this letter at Tab A. Please also be aware that Barbour, Griffith & Rogers, Diligence's co-defendant in the case, has also moved for a stay pending resolution of a Motion to Dismiss and an anticipated Motion for Judgment on the Pleadings; a copy of Barbour, Griffith & Rogers' motion is attached at Tab B. We understood from your July 21st letter that Hughes, Hubbard had taken the sensible position that Diligence's stay motion "moots the Subpoena until such [stay] motion has been addressed," but we are now concerned that Hughes, Hubbard has offered to produce documents notwithstanding the pending stay motions. Diligence had hoped to avoid inconveniencing the Court with an emergency motion to stay discovery, but we must do so immediately if Hughes, Hubbard intends to commence production as early as next week. Clarification on this issue would be most appreciated.

       Finally, I note that in your July 21st letter to Ms. Joffe, Hughes, Hubbard objects to the Subpoena, *inter alia*, "on the ground that all responsive documents in its possession, custody, or control are in fact the property of its clients and are under their control." We agree with this position. Accordingly, in addition to any action that may be necessary vis-à-vis your clients, Diligence will hold Hughes, Hubbard directly responsible for any disposition of <u>KPMG FAS v. Diligence</u> materials in violation of court orders (including, but not limited to, the Court's Seal Order, and the Confidentiality Order) and the contractual commitments contained in the Settlement Agreement – particularly as Ms. Joffe's July 24th letter now confirms that Hughes, Hubbard suggested and invited the very Subpoena directed to the firm. I trust, of course, that no such action will be necessary, and that Hughes, Hubbard will take actions to insure compliance with the Court's orders, will not interfere with the known contractual obligations of its clients set out in the Settlement Agreement, and will allow for an orderly resolution of the pending stay motions that will obviate the need for any production.

       Diligence remains concerned that your July 27th e-mail suggests that production of at least some materials is imminent. Accordingly, please contact me at your earliest convenience so that we may discuss Hughes, Hubbard's position on the matters set out above and, if necessary, seek emergency relief from the Court prior to any production by your firm.

**ægis law group LLP**

Derek J. T. Adler, Esq.
July 28, 2006
Page 4 of 4

Very truly yours,

*Paul Rauser*

Paul C. Rauser

cc: Roberta Koss, Esq.

ægis law group LLP