# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

|  |  |
|---|---|
| KPMG FINANCIAL ADVISORY SERVICES LIMITED, MALCOLM BUTTERFIELD, and MICHAEL MORRISON,<br><br>          Plaintiffs,<br><br>v.<br><br>DILIGENCE LLC,<br><br>          Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 05-2204 (PLF)

*Lt this be filed*
*PJF*
*8/21/06*

## IPOC INTERNATIONAL GROWTH FUND LIMITED'S MOTION TO INTERVENE, FOR ACCESS TO COURT FILES, TO MODIFY PROTECTIVE ORDERS AND TO ALTER CONFIDENTIALITY DESIGNATIONS

IPOC International Growth Fund Limited ("IPOC") hereby moves the court for an order granting leave to intervene in this action ("Motion to Intervene"). IPOC seeks: (1) leave to intervene for limited purposes; (2) immediate access to the Court files; (3) modification of Protective Orders previously entered; and (4) alteration of protective designations placed on discovery materials. Support for IPOC's Motion to Intervene is found in the attached Memorandum in Support.

Pursuant to Local Civil Rule 7(m), counsel for IPOC sought consent of the parties to this Motion. Consent was not obtained from Defendant Diligence LLC. Plaintiffs do not oppose IPOC's intervention for the limited purpose of modifying the Protective Orders, but Plaintiffs reserve the right to respond regarding modifications to the Protective Orders.

RECEIVED

AUG 1 1 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

August 11, 2006

Respectfully submitted,

Of Counsel:
Kimball R. Anderson
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601
Tele:   (312) 558-5858
Fax:    (312) 558-5700
kanderson@winston.com

Timothy M. Broas (D.C. Bar No. 391145)
Carol A. Joffe (D.C. Bar No. 351528)
Anne W. Stukes (D.C. Bar No. 469446)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006
Tele:   (202) 282-5000
Fax:    (202) 282-5100
tbroas@winston.com
cjoffe@winston.com
astukes@winston.com

*Attorneys for Intervenor IPOC International
Growth Fund Limited*

## CERTIFICATE OF SERVICE

I certify that on August 11, 2006, I caused IPOC International Growth Fund Limited's Motion to Intervene, For Access to Court Files, to Modify Protective Orders and to Alter Confidentiality Designations, and the Memorandum in Support, to be served by hand-delivery on:

> Roberta Koss
> Charles Reed
> Hughes, Hubbard & Reed LLP
> 1775 I Street, N.W.
> Washington, DC 20006
> *Counsel for Plaintiffs*
>
> Paul C. Rauser
> Oliver Garcia
> Aegis Law Group LLP
> 901 F Street, N.W., Suite 500
> Washington, DC 20004
> *Counsel for Defendant*

Anne W. Stukes

## UNITED STATES DISTRICT COURT
### DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| KPMG FINANCIAL ADVISORY SERVICES LIMITED, MALCOLM BUTTERFIELD, and MICHAEL MORRISON, | ) ) ) ) | |
| Plaintiffs, | ) | Civil Action No. 05-2204 (PLF) |
| | ) | |
| v. | ) ) | |
| DILIGENCE LLC, | ) | |
| Defendant. | ) ) | |

### MEMORANDUM IN SUPPORT OF IPOC INTERNATIONAL GROWTH FUND LIMITED'S MOTION TO INTERVENE, FOR ACCESS TO COURT FILES, TO MODIFY PROTECTIVE ORDERS AND TO ALTER CONFIDENTIALITY DESIGNATIONS

IPOC International Growth Fund Limited ("IPOC") submits this Memorandum in Support of IPOC's Motion to Intervene, for Access to Court Files, to Modify Protective Orders and to Alter Confidentiality Designations ("Motion to Intervene"). IPOC seeks: (1) leave to intervene for limited purposes; (2) immediate access to the Court files; (3) modification of Protective Orders previously entered; and (4) alteration of protective designations placed on discovery materials. IPOC's Motion should be granted for the following reasons.

### INTRODUCTION

IPOC is the plaintiff in *IPOC International Growth Fund Limited v. Diligence LLC and Barbour Griffith and Rogers, LLC,* Civil Action No. 1:06CV01109 (PLF) ("*IPOC v. Diligence et al.*"), a related lawsuit filed in this Court. In *IPOC v. Diligence et al.*, IPOC seeks redress for the same wrongful activities of Diligence LLC ("Diligence") that are the subject of this action. IPOC seeks access, for use in *IPOC v. Diligence et al.*, to the official Court files and discovery materials in this case. Access to those materials, however, is restricted as a result of: (1) an

Order filed January 25, 2006 that authorizes the Clerk to place in the public court file a Joint

Stipulation Regarding Proposed Redactions to Case File and redacted pleadings and exhibits (the

"Redaction Order"); and (2) the Protective Order Governing Confidentiality and Inadvertent

Disclosure of Documents ("Protective Order"), a blanket protective order that restricts access to

material produced or generated in discovery if designated "Confidential." (Exhibit 1 to Docket

No. 62). The Redaction Order and the Protective Order are hereafter collectively referred to as

the "Protective Orders."

*IPOC v. Diligence et al.* was filed on June 15, 2006 against Defendants Diligence and

Barbour Griffith and Rogers LLC ("BGR"). On July 14, 2006, IPOC served a subpoena (the

"Subpoena") on Hughes Hubbard & Reed LLP ("HHR"). HHR was counsel of record for

KPMG Financial Advisory Services ("KPMG FAS") in this lawsuit. The Subpoena seeks

production of documents related to and/or produced in connection with this lawsuit. Diligence

and BGR were provided notice of the Subpoena before it was served.

HHR is ready to comply with IPOC's Subpoena. Diligence, however, contends that

HHR's compliance with the Subpoena will violate the Protective Orders in this case. In

furtherance of this position, Diligence filed a motion in *IPOC v. Diligence et al.* seeking to

prohibit compliance with the Subpoena by HHR and KPMG FAS pending further order of the

Court. *See* Motion for Emergency Consideration of Motion to Stay Discovery and for Order

Prohibiting Disclosure of Sealed Court Materials (filed in *IPOC v. Diligence et al.* July 31,

2006).

The redactions to the Court file and the "Confidential" designations in this case far

exceed those that are "absolutely necessary" and hide information far afield from the materials

stolen from KPMG FAS's investigation of IPOC. The material redacted from the Court files and

2

buried by "Confidential" designations includes information detailing Diligence's illicit conduct, not information of the sort that protective orders are designed to protect.

As we detail below, IPOC should be permitted to intervene and granted immediate access to the unredacted Court file; the Protective Orders entered in this case should be modified; and the "Confidential" protective designations placed on discovery materials should be altered.

## FACTUAL BACKGROUND

The facts alleged in KPMG FAS's Complaint bear upon this Motion. Those facts are as follows. IPOC has been engaged in international arbitration proceedings with LV Finance Group ("LVFG") for three years. IPOC alleges in those proceedings that LVFG is effectively controlled by, or operated for the benefit of, the Alfa Group. After IPOC initiated the arbitration proceedings, LVFG and/or Alfa, on information and belief, instigated an investigation of IPOC pursuant to the Bermuda Companies Act. *See* Compl. at ¶ 1.

Plaintiffs (collectively "KPMG FAS") were appointed pursuant to section 132 of the Bermuda Companies Act (the "Act") by the Minister of Finance of Bermuda to investigate IPOC and eleven affiliated Bermuda companies (the "Investigation"). Compl. at ¶ 10. The Act requires the Investigation to remain strictly private and confidential unless the company under investigation requests that it be made public.[1] During the Investigation, KPMG FAS obtained "confidential financial and other business records of IPOC," conducted interviews of individuals with relevant information about IPOC, "collated and analyzed large volumes of confidential

---

[1]    "Any investigation under this section shall be held in private *unless the company requests that it be held in public*." Bermuda Companies Act of 1981 § 132(6). "The inspector may from time to time report to the Minister and shall upon completion of his investigation report to him and shall send copies of such reports to the company. *No other person shall be informed of the nature or contents of the report save at the request of the company or on the direction of the Minister*." *Id.* § 132(7) (emphasis added). None of the companies under investigation requested that the Investigation be made public.

documents and information relating to the affairs of IPOC and its affiliates" and prepared working papers and a draft report containing IPOC's Confidential Information. *See* Compl. at ¶ 12.

Defendant Diligence was hired by LVFG and Alfa Telecom to obtain the information that KPMG FAS had acquired or generated as a part of its Investigation and which it held in strict confidence. Diligence engaged in deceptive and illegal acts to obtain the information. *See* Compl. at ¶ 1. Diligence disclosed the stolen information to third parties, including IPOC's business and litigation adversaries. It is undisputed that a portion of a highly confidential KPMG FAS Draft Report stolen by Diligence appears almost verbatim in submissions made by LVFG to an arbitration tribunal in the dispute between IPOC and LVFG. Compl. at ¶ 14.

## PROCEDURAL BACKGROUND

### A.    The Sealed Court Files.

On November 10, 2005, KPMG FAS filed its Complaint in this case under seal, and its existence was hidden from public view. The next day, this Court granted KPMG FAS *ex parte pendente lite* relief and directed that, once the Order was served upon the Defendant, the Clerk "shall then place on the public record all papers previously filed under seal." Memorandum Opinion and Order (the "November 11 Order"). The November 11 Order was served upon Diligence on November 16, 2005.

On November 17, after receiving a letter from Diligence asking that the Court files remain under seal while Diligence reviewed the recently served papers, the Court vacated the November 11 Order and directed that the Court files remain under seal until further order. IPOC did not learn of the existence of this case for more than three months. Diligence quickly filed papers requesting that the entire court file remain under seal until KPMG FAS's then-pending

4

motions for expedited discovery and preliminary injunction were resolved. *See* Memorandum in

Support of Motion to Maintain Case Under Seal ("Motion to Retain Seal") (Nov. 17, 2005). The

Motion to Retain Seal is based upon Diligence's bare allegations that (1) the court file contains

information from "confidential work papers by defendant," (2) no "appreciable harm" will result

from maintaining the status quo "while Plaintiff's pending motions are resolved," (3) unsealing

the case would harm Defendant by "release of documents purporting to be confidential,

proprietary work papers of the Defendant concerning a confidential arbitration proceeding," and

(4) KPMG FAS and Diligence had agreed that "this case should remain under seal for the

immediate future." *Id.* Diligence made no attempt to demonstrate that any portion of the court

file contains trade secrets or proprietary information that may warrant protective orders.

KPMG FAS also moved the court to order that files that contain information concerning

KPMG FAS's confidential investigation of IPOC be maintained under seal. *See* Memorandum

of Points and Authorities in Support of Motion for Reconsideration at 2 (Nov. 21, 2005) (arguing

that disclosure would "threaten the integrity and fairness of the process itself").

The Court denied the request to seal the entire court file, explaining the strong

presumption in favor of public access to judicial proceedings.

> Clearly, as much of the record in this case as possible must be opened as
> promptly as possible, in light of both considerations of public access and
> the plaintiffs' acknowledgement of the fact that this case does not fit into
> the extremely narrow and extremely infrequent category of cases
> (usually criminal cases or grand jury proceedings) requiring that the
> entire case be kept under seal, and further acknowledging that a redacted
> complaint, motion for temporary restraining order, and other documents
> can easily be prepared and publicly filed.[2]

---

[2]    The Court further found:

In every civil case, at least the fact that the lawsuit exists must be a matter of
public record; the docket sheet (or a redacted version thereof) must be a matter of
public record; and each filing or, in extreme cases, at least notice of the filing
including the title must be a matter of public record. Where redactions are

Memorandum Opinion and Order filed January 4, 2006. In light of the stated strong presumption in favor of public access to judicial proceedings, the Court directed that any redactions to the court file be limited to those that are "absolutely necessary" and that "redactions shall be made solely to the extent necessary to preserve the confidentiality of the relevant information and in accordance with the principles set forth in this Memorandum Opinion and Order." *Id.*

### B.    The Joint Stipulation and Order Redacting the Court Files.

On January 20, 2006, a Joint Stipulation Regarding Proposed Redactions to Case File ("Joint Stipulation") was filed. The Joint Stipulation contained redacted versions of all court filings, including "the declarations and exhibits submitted in support of plaintiffs' motions for preliminary relief in their entirety, as well as excerpts of the parties' filings and orders of this Court which either quote directly from those declarations and exhibits or necessarily refer to them." The Joint Stipulation provides for large portions of the case file to be redacted, including, *inter alia*, the Complaint (redacted nearly 25%), the Answer, KPMG FAS's papers in support of a temporary restraining order and expedited discovery, Diligence's papers in support of a motion to dismiss, four Declarations submitted by KPMG FAS setting forth the facts of the case, and

---

permitted by the Court they must be limited to that which is absolutely necessary. In this case, there has been some confusion between the concept of maintaining the case file under seal - that is the documents (or portions thereof) filed with the Court and relating to this case - and keeping the case itself under seal. In accordance with the Court's Order and due to a misunderstanding of what it meant to keep the case file under seal, the Clerk of the Court has kept the entire case under seal, rather than merely the documents in the case. The existence of this case has, therefore, not been public. The Court has corrected this error and the case caption is now public, as well as any and all documents filed prior to today remain under seal pending the parties' joint report in response to this Order.

Memorandum Opinion and Order at 3 n.2 (Jan. 4. 2006).

KPMG FAS's papers in support of removing "Confidential" designations. The Court ordered the Clerk to file the Joint Stipulation upon the public record and to file each of the exhibits thereto "in its redacted form (Exhibits A through R) as a separate filing on the public record and to enter the caption of each on the docket sheet in this case." Order at 1-2 (Jan. 25, 2006). A January 25, 2006 motions hearing transcript was also redacted. As a result of the redactions to the case file, nearly all recitations of facts that support the claims and defenses remain completely hidden from IPOC and the public.

### C. The Protective Order.

On May 19, 2006, the Court approved a stipulated, blanket Protective Order that permits any party to designate any discovery materials as "Confidential." *See* Exhibit 1 to Docket No. 62. Diligence apparently designated every document it produced, all depositions, and all responses to discovery requests as "Confidential." The materials designated as "Confidential" include the depositions of the corporate representative of Diligence and Keith Schuette, a former partner at BGR, who was the key contact between Diligence and BGR's clients, LVFG and Alfa. In the deposition of Diligence's corporate representative, Diligence "admitted all the central allegations in the Complaint." *See* Reply Memorandum of Points and Authorities in Further Support of Motion to Remove at 1 (May 3, 2006).[3]

KPMG FAS moved the Court to remove the "Confidential" designation from some of the materials that Diligence had designated, because "Defendant's desire to prevent disclosure of what it did seems to be based only on a desire to prevent disclosure of its own flagrant misconduct." *See* Motion to Remove "Confidential" Designation at 8 (April 11, 2006). KPMG

---

[3]    The description of Diligence's wrongful conduct, as admitted during its corporate representative deposition, however, has been redacted from the Court files. *See, e.g.,* Reply Memorandum of Points and Authorities in Further Support of Motion to Remove at 1-2 (May 3, 2006).

FAS, however, withdrew its motion and thereby withdrew the Court's opportunity to examine the documents, depositions or other discovery materials to determine the propriety of Diligence's "Confidential" designations. Upon information and belief, many (possibly all) of the documents designated by Diligence as "Confidential" contain facts that relate to Diligence's wrongdoing as alleged in KPMG FAS's Complaint rather than trade secret, attorney-client privileged or confidential commercial information subject to protection.

### D. Confidential Materials Stolen from the KPMG FAS Investigation.

This action was brought by KPMG FAS to stop the dissemination or disclosure of the information that Diligence purloined. That information is, and should remain, confidential, including documents and information gathered or prepared by KPMG FAS in connection with its investigation of IPOC, which were purloined from it by Diligence, and any other materials that disclose information contained in the purloined materials (the "Confidential Materials"). IPOC does not seek to lift the seal or Protective Orders from those materials.

### ARGUMENT

### I.    The Court Should Permit IPOC to Intervene in this Case for the Limited Purpose of Modifying Existing Protective Orders.

The D.C. Circuit—along with every other Circuit to consider the question—has held that intervention is the proper vehicle for a non-party to request modification of a protective order. *EEOC v. National Children's Ctr., Inc.*, 146 F.3d 1042, 1045-46 (D.C. Cir. 1998). Intervention is the appropriate course even where, as here, the original parties have settled the suit and the case is closed on the Court's docket. *See id.* at 1047 ("We simply note that there is a 'growing consensus among the courts of appeals that intervention to challenge confidentiality orders may take place long after a case has been terminated.'") (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 779 (3d Cir. 1994)).

Intervention pursuant to Federal Rule of Procedure 24 may be either "of right" under Rule 24(a) or "permissive" under Rule 24(b). IPOC meets both tests of intervention.

### A.    IPOC Should be Granted Leave to Intervene as of Right.

Intervention as of right under Fed. R. Civ. P. 24(a) depends upon four factors: "(1) the timeliness of the motion; (2) whether the applicant 'claims an interest relating to the property or transaction which is the subject of the action'; (3) whether 'the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest'; and (4) whether 'the applicant's interest is adequately represented by existing parties.'" *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003) (citing *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1074 (D.C. Cir. 1998)). IPOC satisfies each of the four factors.

First, IPOC's motion to intervene is timely. "Whether a motion to intervene is timely made is 'to be determined from all the circumstances, including the purpose for which intervention is sought ... and the improbability of prejudice to those already in the case.'" *Foster v. Gueory*, 655 F.2d 1319, 1324 (D.C. Cir. 1981) (citations omitted) (motion filed ten months after complaint timely where no prejudice to defendant); *see also Nationwide Mut. Ins. Co. v. Nat'l REO Mgmt., Inc.*, 205 F.R.D. 1, 6 (D.D.C. 2000) (application filed four months after intervenor learned of lawsuit was timely where intervention was necessary to preserve intervenor's rights); *Hartman v. Duffy*, 158 F.R.D. 525, 534 (D.D.C. 1994) (intervention after entry of judgment was timely where intervenor's interests not adequately protected), *aff'd in part, remanded in part on other grounds*, 88 F.3d 1232 (D.C. Cir. 1996), *cert. denied*, 520 U.S. 1240 (1997). IPOC brings this motion promptly after, in the related case, BGR and Diligence filed motions seeking to dismiss IPOC's Complaint for failure to plead with particularity and

9

immediately after Diligence attempted to quash IPOC's Subpoena to HHR on grounds of, *inter alia*, the Protective Orders in this action. Neither KPMG FAS nor Diligence will be prejudiced by IPOC's intervention at this juncture, after the case has been dismissed, because IPOC does not seek to intervene on the merits of the action, but only to modify the Protective Orders. *See Pansy*, 23 F.3d at 779-80 (" 'Because [the intervenor] sought to litigate only the issue of the protective order, and not to reopen the merits, we find that its delayed intervention caused little prejudice to the existing parties in this case.'") (quoting *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 786 (1st Cir. 1988)).

Second, IPOC claims an interest related to the property and transactions that are the subject of this action. Diligence's wrongful actions in infiltrating KPMG FAS's investigation of IPOC and obtaining confidential information about IPOC are the focus and subject matter of both cases. It is plain that IPOC claims an interest in the transactions that are the subject of this action.

Third, IPOC's interest will be impaired or impeded if it is not allowed to intervene. The Protective Orders in this case—entered on stipulation of KPMG FAS and Diligence—have sealed the court records and hidden facts from IPOC. As noted above, Diligence and BGR ironically claim in the related action that IPOC has failed to plead the facts underlying the transactions with sufficient particularity. The information redacted from court records and concealed by "Confidentiality" designations in this case will undoubtedly reveal all of the particularity—and more—that Diligence and BGR allege is currently missing from IPOC's related case.

Fourth, IPOC's interest is not adequately represented by existing parties. Representation by an existing party is inadequate "if [intervenor] shows that representation of [its] interest 'may

10

be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972) (citing 3B JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 24.09-1 (4) (1969)). The D.C. Circuit has "described this requirement as 'not onerous.'" *Fund for Animals*, 322 F.3d at 735; *Foster*, 655 F.2d at 1325. Here, although KPMG FAS at first blush might appear aligned with IPOC's interests, KPMG FAS has not moved the Court to modify the Protective Orders to allow IPOC access to the pleadings and discovery in this case. This incongruity of interests is sufficient for intervention purposes. *See Fund for Animals, Inc.*, 322 F.3d at 737 ("interests need not be wholly 'adverse' before there is a basis for concluding that existing representation of a 'different' interest may be inadequate") (quoting *Nuesse v. Camp*, 385 F.2d 694, 703 (D.C. Cir. 1967)).

> **B.    Alternatively, IPOC Should be Granted Leave to Intervene Permissively.**

Even if the Court declines to allow IPOC to intervene as a matter of right, IPOC should nonetheless be permitted to intervene permissively. "[T]hird parties may be allowed to permissively intervene under Rule 24(b) for the limited purpose of seeking access to materials that have been shielded from public view either by seal or by a protective order." *National Children's Ctr.*, 146 F.3d at 1046; *accord Pansy*, 23 F.3d at 778-79; *see also* 6 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE-CIVIL § 26.106[2] (3d ed. 2000). To intervene permissively "[u]nder Rule 24(b)(2), an applicant must present (1) an independent ground for subject-matter jurisdiction; (2) a claim or defense that has a question of law or fact in common with the main action; and (3) a timely motion." *Nationwide Mut. Ins.*, 205 F.R.D. at 5; *accord National Children's Ctr.*, 146 F.3d at 1046. Each of these requirements is relaxed in the context of intervening to modify protective or confidentiality orders, and IPOC satisfies all three.

First, "the general requirement of an independent jurisdictional basis" is "simple" in this context because "intervenors do not ask the district court to exercise jurisdiction over an additional claim on the merits, but rather to exercise a power that it already has, namely the power to modify a previously entered confidentiality order." *National Children's Ctr.*, 146 F.3d at 1047. A court that issues a protective order or a seal order always retains the power to modify that order. *See United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990); *Public Citizen*, 858 F.2d at 781-82. Thus, requirement one for permissive intervention is satisfied.

Second, IPOC's claims in the related suit easily have questions of law or fact in common with this action. Indeed, the same facts underlie both actions. A finding that the "same facts give rise to the applicant's independent claim and the lawsuit before the court is enough to establish a common question of law or fact for this purpose." *Nationwide Mut. Ins.*, 205 F.R.D. at 6. Indeed, "the message of the case law" on this requirement "is that 'no particularly strong nexus of fact or law need exist between the two suits' when a nonparty seeks to intervene for the sole purpose of gaining access to documents subject to a confidentiality order." *National Children's Ctr.*, 146 F.3d at 1048 (quoting *United Nuclear*, 905 F.3d at 1427); *see also Pansy*, 23 F.3d at 778 (noting that Rule 24(b)(2)'s requirement of a common question of fact or law is relaxed where, as here, the intervenor seeks not to intervene as a party, but only to intervene for the limited purpose of modifying a protective order).

Third, IPOC's motion is timely for the reasons discussed above, notwithstanding that this action is closed. In *National Children's Center,* the D.C. Circuit found permissive intervention for the limited purpose of challenging a protective order appropriate even though the motion was

filed "almost two years after the original parties had settled the case." *National Children's Ctr.*,

146 F.3d at 1047. As the Third Circuit has observed,

> [T]hird parties may often have no way of knowing at the time a confidentiality order is granted what relevance the settling case has to their interests. Therefore, to preclude third parties from challenging a confidentiality order once a case has been settled would often make it impossible for third parties to have their day in court to contest the scope or need for confidentiality.

*Pansy*, 23 F.3d at 780.

## II.     The Redaction Order and Protective Order Should Be Modified and Lifted.

### A.     The Court Has the Power to Modify the Protective Orders.

The Court has the power to lift or modify a protective order. *National Children's Ctr.*,

146 F.3d at 1047 (citing *In re "Agent Orange" Product Liability Litigation*, 821 F.2d 139, 145

(2d Cir. 1987) ("It is undisputed that a district court retains the power to modify or lift protective

orders that it has entered."). When a Court determines whether to modify a protective order, a

balancing test is generally applied, weighing the need for information against the injury that

might result from disclosure. *See, e.g., Pansy*, 23 F.3d at 787, 790. This is the same balancing

test that is used to determine whether to grant a protective order in the first instance, with the

additional consideration of reliance. *Id.*[4]

The fact that the parties have relied on the order, however, cannot be an outcome-

determinative factor in deciding whether a protective order should be modified, and it cannot be

the only factor that the court considers. *See, e.g., Pansy*, 23 F.3d at 787, 790. Courts also

consider the producing party's interest in privacy, the legitimacy of the purposes for which the

---

[4]     The foundation for entry of any protective order is Rule 26(c), which provides for entry of a protective order "for good cause shown." Fed. R. Civ. P. 26(c). A party "may not, however, simply allege a broad need for a protective order so as to avoid general harm, but must demonstrate specific facts which would justify such an order." *Flanagan v. James*, 231 F.R.D. 98, 102 (D.D.C. 2005).

information is sought, and whether production would promote fairness and efficiency. *See id.* at 787-90. Other factors considered by courts include whether the protective order was agreed upon by the parties and whether modification will avoid duplicative discovery in collateral litigation and the public interest in open access to records and documents. *Id.*

Under these standards, this Court should modify the Protective Orders issued in this case.

**B.    All Court Files Should be Unsealed, Except the Confidential Materials.**

In November 2005, after the Court directed that the Clerk unseal the court files, the parties moved for orders directing that the seal be maintained. This Court refused to do so and, instead, held that "[c]learly, as much of the record in this case as possible must be opened as promptly as possible." Memorandum Order and Opinion at 3 (Jan. 4, 2006). Under the law, there is a *presumption of public access to court records.* As this Court noted, "[c]ourts are not intended to be, nor should they be, secretive places for the resolution of secret disputes." *Id.* (citing *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597 (1978) ("[I]t is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents."); *Johnson v. Greater Southeast Cmty. Hosp.,* 951 F.2d 1268, 1277 (D.C. Cir. 1991) ("strong presumption in favor of public access to judicial proceedings"); *United States v. Hubbard,* 650 F.2d 293, 317 n.89 (D.C. Cir 1980) (trial court's discretion to restrict access to court records should "clearly be informed by this country's strong tradition of access to judicial proceedings")); *see also Brown & Williamson Tobacco Corp. v. FTC,* 710 F.2d 1165, 1179 (6th Cir. 1983) (harm to a company's reputation does not justify sealing court records); *Tinman v. Blue Cross & Blue Shield of Michigan,* 176 F. Supp. 2d 743, 746 (E.D. Mich. 2001) ("mere embarrassment is not enough to satisfy the requirements of ...FRCP 26(c)"); *Nicklasch v. JLG Indus., Inc.,* 193 F.R.D. 570, 574 (S.D. Ind. 1999) (possible embarrassment not sufficient to seal court records); *accord Brown v. Advantage Eng'g, Inc.,* 960

F.2d 1013, 1015-16 (11th Cir. 1992) (holding that a court may deny access to judicial files only after a showing that "the denial is *necessitated by a compelling governmental interest, and is narrowly tailored to [...] that interest*") (emphasis in original).

The extensive redacted portions of the court files in the instant case were selected by KPMG FAS and Diligence, not by the Court, and the parties redacted the court file by stipulation, without establishing good cause. Upon information and belief, the redacted portions contain two types of information: (1) the Confidential Materials stolen from KPMG FAS; and (2) materials that describe the details of Diligence's theft of the Confidential Materials, rather than the contents of the Confidential Materials.

KPMG FAS's interest in preserving the confidentiality of the stolen Confidential Materials—as defined earlier in this brief—has a legitimate basis because KPMG FAS was required by Bermuda statute to keep the information confidential. IPOC does not seek to unseal the portions of the file redacted to protect the Confidential Materials. IPOC does seek access to the Confidential Materials under an Attorney's Eyes Only protective order, however, because IPOC needs those materials to prepare its related case *IPOC v. Diligence et al.*

Good cause sufficient to overcome the presumption of public access to court files has not been shown for the remainder of the redacted information. While Diligence has used the words "confidential," "proprietary" and "work product" to describe the materials, the documents are not alleged to contain trade secrets, attorney work product or material that is otherwise protected by evidentiary privilege. Additionally, Diligence has thus far offered no basis to support its claim that any documents require or deserve protection.

Diligence did make clear in its filings, however, that the redacted court files will reveal documents that "relate to services performed by Defendant for one of its clients involved in an

international arbitration proceeding." Mem. in Supt. of Def.'s Motion to Maintain Case Under Seal at 5 (Nov. 17, 2005). Even this meager description provided by Diligence leads to a single conclusion: the redacted documents detail the "services" undertaken by Diligence for LVFG and Alfa to steal the Confidential Materials from KPMG FAS to use against IPOC in several international arbitrations—exactly what IPOC alleges in the related case.

Diligence's virtual admission that disclosure of these documents would be relevant to IPOC's claims against Diligence and BGR provides a basis for disclosure, not a basis to hide the information by redaction of the Court files. Moreover, the documents contain information of substantial interest to the public. One of the contentions made in this case and in *IPOC v. Diligence et al.* is that the agents of Diligence masqueraded as government security agents as part of their illegal scheme to obtain the Confidential Materials from KPMG FAS. Certainly, the impersonation of government security agents is of significant interest to the public.

### C.      Modifying and/or Lifting the Protective Orders will Promote Efficiency.

IPOC seeks not only to lift the seal from the public file in this case, including any and all hearing transcripts, but also seeks unrestricted access to all discovery material exchanged between the parties and third-parties, including responses to interrogatories and requests for admissions, deposition transcripts and all documents produced by parties and third parties in discovery. These materials are squarely relevant to *IPOC v. Diligence et al.*, and upon information and belief, the materials will detail not only Diligence's misconduct regarding the KPMG FAS investigation, but also ongoing activity by Diligence that is detrimental to IPOC. Absent modification of the Protective Orders, IPOC will need to duplicate the discovery that already has taken place in this case, causing unnecessary expenditures of time, money, and effort for all parties involved.

Courts have found the avoidance of duplicative discovery in collateral proceedings a compelling reason to modify protective orders. The Seventh Circuit, for example, has held that "where a third party wishes to modify a protective order so as to avoid duplicative discovery in collateral litigation, policy considerations favoring the efficient resolution of disputes justify modification unless such an order would tangibly prejudice substantial rights of the party opposing modification." *Grove Fresh Distrib., Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 896 (7th Cir. 1994) (citing *Wilk v. American Med. Ass'n.*, 635 F.2d 1295, 1299 (7th Cir. 1980)). Even where opposing parties demonstrate prejudice, the court has broad discretion to modify the protective order. *See id.* Third parties who demonstrate that material covered by a protective order would be relevant and discoverable in collateral litigation are *presumptively entitled* to access to the discovery on the same terms as the parties to the protective order. *See id.* Similarly, the Tenth Circuit has hailed the efficiency of modifying protective orders to save "time and effort in the collateral case by avoiding duplicative discovery." *United Nuclear*, 905 F.2d at 1428.

**D.    The Court Should Lift the "Confidential" Designation from All Discovery Material Except the Confidential Materials that Diligence Stole from KPMG FAS.**

The federal rules authorize district courts to grant protective orders only "for good cause shown . . . to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). Even where the parties to a case stipulate to a protective order, the court must independently determine if "good cause" exists. *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994). To establish good cause, a party must "articulate a real and specific harm," *PHE, Inc. v. Department of Justice*, 139 F.R.D. 249, 252 (D.D.C. 1991), and must "articulate specific and particular facts showing good cause."

*Avirgan v. Hull*, 118 F.R.D. 257, 261-62 (D.D.C. 1987); *see also United States v. Exxon Corp.*, 94 F.R.D. 250, 251 (D.D.C. 1981) ("particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements") (quoting 8 CHARLES ALAN WRIGHT & ARTHUR C. MILLER, FEDERAL PRACTICE & PROCEDURES § 2035 (1970)).  When the request for protective order is sought for materials alleged to be confidential business information, the good cause standard "demands that the company prove that disclosure will result in a 'clearly defined and very serious injury to its business.'" *Exxon*, 94 F.R.D. at 251 (quoting *United States v. IBM Corp*, 67 F.R.D. 40, 46 (S.D.N.Y. 1975)); *John Does I-VI v. Yogi*, 110 F.R.D. 629, 632-35 (D.D.C. 1986).  "[S]imply showing that information would harm the company's reputation is not sufficient to justify a seal of the record." *John Does I-VI*, 110 F.R.D. at 634 n.3 (internal quotations omitted) (denying protection for answers to interrogatories, including details about the alleged fraudulent actions that went "to the heart of the case").  Neither harm to a company's reputation nor possible embarrassment are sufficient to justify sealing court records. *Tinman*, 176 F. Supp. 2d at 746 n.4 (citing *Brown & Williamson Tobacco Corp.*, 710 F.2d at 1179, and *Nicklasch*, 193 F.R.D. at 574, respectively).

The Protective Orders in this case were stipulated, blanket orders for which the parties did not establish, and the Court did not analyze, the good cause for protecting the documents. "Although such blanket protective orders may be useful in expediting the flow of pretrial discovery materials, they are by nature overinclusive and are, therefore, peculiarly subject to later modification." *Public Citizen*, 858 F.2d at 790; *see John Does I-VI*, 110 F.R.D. at 632 ("Blanket orders only postpone, rather than prevent, the need for the Court to closely scrutinize discovery materials to see if the seal is justified").  Because no individualized showings are necessary for stipulated, blanket orders, the parties' reliance on such orders is a less persuasive

factor against modification. *See Beckman Indus., Inc. v. International Ins. Co.*, 966 F.2d 470, 475-76 (9th Cir. 1992) (finding, where protective order was a stipulated blanket order, that party opposing modification never made the showing necessary to justify continued protection of deposition transcripts). A protective order that contains no findings and that was apparently granted without the court having conducted a balancing test may be considered "improvidently granted" and justifiably may be modified. *See Pansy*, 23 F.3d at 786 & n.14, 792.

Neither the Redaction Order authorizing filing of redacted pleadings pursuant to the Joint Stipulation nor the designation of documents as "Confidential" under the Protective Order were supported by a showing of good cause by the parties. Because here, the parties to the orders were not required to make a "good cause" showing to justify the need for protection, the parties' reliance on the orders should be given diminished weight. Diligence's desire to prevent disclosure of its own wrongful conduct is not a legitimate basis for confidential treatment. Accordingly, the Court is justified in lifting the Protective Orders in a manner that allows disclosure of discovery material to IPOC for use in the related litigation. The Court should therefore lift the "Confidential" designation from all discovery material except for the Confidential Materials that Diligence stole from KPMG FAS, which are required by Bermuda law to remain confidential. All other discovery material, including responses to interrogatories and requests for admissions, deposition transcripts and all documents produced by parties and third parties in discovery should no longer be designated "Confidential."

E.    **The Court May Bind IPOC to the Terms of the Modified Protective Orders Where Appropriate.**

IPOC respectfully requests the Court lift the Protective Orders from all materials, except the Confidential Materials that Diligence stole from KPMG FAS. The Court can remedy any immediate concern about the confidentiality of the material by binding IPOC to the terms of a

19

modified protective order where appropriate, *i.e.,* a modified protective order that calls for Attorneys' Eyes Only protection of the Confidential Materials purloined from KPMG FAS and required to be kept confidential by Bermuda statute. *See Grove Fresh*, 24 F.3d at 896; *United Nuclear*, 905 F.2d at 1428. Absent a showing that this protection is insufficient, there is no reason for the Court to deny modification of the Protective Orders. *See Beckman*, 966 F.2d at 475; *Wilk*, 635 F.2d at 1301. As this court has observed, "protective orders should be modified and all documents unsealed except where a particularized showing is made justifying the need for continued protection from public disclosure." *Independent Petrochemical Corp. v. Aetna Cas. & Surety Co.*, 1988 WL 23257, \*4 (D.D.C. Oct. 31, 1988). Protective and seal orders such as the ones in this case "do not entitle the parties to conduct this litigation behind a permanent and unchallengeable curtain of secrecy." *Id.* at \*5.

## CONCLUSION

For all of the foregoing reasons, IPOC respectfully requests that the Court: (1) permit IPOC to intervene in this case; (2) direct the immediate release to IPOC of all materials filed with the court and court transcripts in this case in unredacted form; (3) modify the Redaction Order to unseal all court records except those that would disclose Confidential Materials stolen by Diligence from KPMG FAS that are required by Bermuda law to be kept confidential; (4) change the designation placed on the Confidential Materials stolen by Diligence from KPMG FAS that are required by Bermuda law to be kept confidential from "Confidential" to "Attorney's Eyes Only"; and (5) remove all other "Confidential" designations placed on discovery materials, including responses to interrogatories and requests for admissions, deposition transcripts and all documents produced by parties and third parties in discovery.

August 11, 2006

Respectfully submitted,

_Anne W. Stukes_

Of Counsel
Kimball R. Anderson
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601
Tele:   (312) 558-5858
Fax:    (312) 558-5700
kanderson@winston.com

Timothy M. Broas (D.C. Bar No. 391145)
Carol A. Joffe (D.C. Bar No. 351528)
Anne W. Stukes (D.C. Bar No. 469446)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006
Tele:   (202) 282-5988
Fax:    (202) 282-5100
tbroas@winston.com
cjoffe@winston.com
astukes@winston.com
*Attorneys for Intervenor IPOC International
Growth Fund Limited*